# United States Court of Appeals
## For the First Circuit

No. 08-1263

UNITED STATES OF AMERICA,

Appellee,

v.

DERRICK ISOM,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Boudin, Tashima,[*] and Howard,
Circuit Judges.

Todd A. Bussert, with whom Law Office of Todd A. Bussert,
was on brief, for appellant.
Donald C. Lockhart, Assistant United States Attorney with
whom Robert Clark Corrente, United States Attorney, Kenneth P.
Madden, and Sandra R. Hebert, Assistant United States Attorneys,
were on brief, for appellee.

September 2, 2009

[*]Of the Ninth Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**.   In December 2006, appellant Derrick Isom ("Isom") pled guilty to two criminal counts involving possession and distribution of cocaine base, also known as crack.[1] In November 2007, Isom moved to withdraw his guilty plea.  After a hearing, the district court denied the motion and subsequently sentenced Isom to 300 months' imprisonment.  On appeal, Isom argues that the district court erroneously denied the motion to withdraw. Alternatively, he claims that several legal defects rendered his guilty plea invalid ab initio.  For its part, the government urges us to enforce the appeal-waiver provision of Isom's plea agreement and dismiss this appeal.  Although the matter is complicated by some unusual twists in the case of a co-defendant, we affirm Isom's conviction.

## I.  Factual Background[2]

The federal indictment against Isom and one-time co-defendant Khalid Mason was issued in October 2006, but the trail of this case stretches back to December 2003, when a paid informant told Providence, Rhode Island police that he had purchased crack

---

[1]Count I charged conspiracy to distribute and to possess with intent to distribute fifty grams or more of cocaine base.  Count II charged possession with intent to distribute fifty grams or more of cocaine base.

[2]We take the facts from unopposed aspects of the plea agreement, plea colloquy, the prosecution's version of facts presented at Isom's change of plea hearing, the presentence investigation report and other related hearings. United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

cocaine from Isom and Mason. According to the informant, the two were conducting a substantial narcotics operation from a home on Pavilion Avenue in Providence and another in Pawtucket, Rhode Island. Following a period of surveillance, the police obtained a search warrant for both locations in January 2004. As they prepared to execute the warrant on the Pavilion Avenue house, the officers saw Isom leaving. He left the scene in his car, placing a cell phone call to Mason as he fled. Isom was arrested later the same day. The search of 214 Pavilion Avenue yielded slightly more than 303 grams of crack cocaine, packaging materials, $2360 in cash, and personal items suggesting that Khalid Mason lived there. The search of the Pawtucket residence uncovered personal information linking Isom to the apartment, and over $9500 in a jacket belonging to Isom.

A federal grand jury indicted Isom and Mason in October 2006.[3] Trial was eventually set for January 2007. On November 30, 2006, Isom and his attorney signed a plea agreement. In addition to Isom's agreement to plead guilty to both charged counts, the government agreed, inter alia, to structure its sentence enhancement submission[4] such that only one of three prior felony

_____

[3]A state prosecution was dismissed in November 2006, approximately one month after the federal indictment issued. The government was unable to provide the trial court with an answer as to the reason for the passage of time between the state arrest and the federal prosecution.

[4]See 21 U.S.C. §851

drug convictions would be included, resulting in a minimum sentence of twenty years, rather than life imprisonment. For his part, Isom stipulated that he "conspired with Khalid Mason to possess in excess of 303 grams of cocaine base, 'crack,' with the intent to distribute." And finally, the plea agreement included the following passage:

> Defendant understands that Defendant may have the right to file a direct appeal from the sentence imposed by the Court. Defendant hereby waives defendant's right to file a direct appeal, if the sentence imposed by the Court is within the guideline range determined by the Court or lower. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the government retains its right to appeal any of the Court's sentencing determinations.

## II.  Change of Plea Hearing

As the sole target of this appeal is Isom's guilty plea, we revisit the change of plea hearing in some detail.

Isom's change of plea hearing took place on December 15, 2006. The hearing began with a lengthy discussion between Isom, his attorney (a federal public defender) and the judge concerning Isom's complaints about his representation. Isom's grievances fell into a two general categories:  first, that his attorney both failed to obtain all discovery to which Isom was entitled and failed to provide him with all discovery the government had turned over; second, that she failed to provide him with research

-4-

materials on certain legal issues. The district court pursued both areas of contention.

The government detailed the discovery it had provided, which included interview reports ("DEA-6s"), a compact disc with a recording of Isom's post-arrest statement to police, and all other reports on the case. Defense counsel informed the court that she met with Isom five times after his arrest, both before and after receiving discovery from the government.

After the court expressed its view that Isom had received all discovery to which he was entitled, Isom suggested that he had insufficient time to review the materials. The court addressed this complaint by noting that some five weeks had passed between Isom's receipt of the material and the plea hearing.

This was followed by one of several instances in which the court reminded Isom that he still had the choice to plead not guilty, or to plead guilty without the agreement. Isom's response forms the linchpin of one of his appellate arguments: "[I]f you feel as though she's done her job, and that's all she was supposed to do, then I can't argue the fact. So if it means I need to plead, and I need to take the plea that was right for me, then, you know, that's what I'll do." The judge also reiterated Isom's options when Isom complained about the agreement's appeal-waiver provision.

Isom then shifted gears somewhat, stating that the information he lacked "had nothing to do with discovery." He said that his attorney "would tell me she was going to do something and she didn't do it." When pressed, Isom told the court that his attorney did not fulfill her promise to provide him with relevant caselaw, and, more generally, that she failed to adequately explore the legal weaknesses in the government's case. As to the first contention, the district court explained to Isom that it was not his lawyer's role to "educate [him] to [her] level of understanding of the law." As to the second issue, the Court asked defense counsel whether she examined "all aspects" of Isom's case, to ensure that Isom's constitutional rights were protected. Defense counsel answered affirmatively and informed the court that she also had consulted with another attorney in the public defender's office to be certain she hadn't overlooked anything. The judge, satisfied with counsel's answer, told Isom that he hadn't "heard anything that leads me to believe that the Public Defenders' Office hasn't done everything that they should do, and, frankly, more than you would get in . . . many other places to ensure that your rights were protected . . . ."

The judge-defendant colloquy, which encompassed approximately fifteen transcript pages, ended with the following exchange:

> COURT: Now, I think we have spent more than
> enough time on this. I am convinced, Mr.

Isom, that this is an example of what happens from time to time where a defendant is unhappy with the situation that he finds himself in, and so he wants to avoid making the hard decision that you have to make and wants to blame the lawyer for that. It's time for you to make a decision about what you want to do. All right?

ISOM: Okay.

COURT: I've explained to you the choices that you have. First, among them is you don't have to plead guilty. All right? No one is making you do that. So if you'd like me to just enter you a plea of not guilty, and we'll go to trial and all of your rights will be protected, and we'll go to trial, but I want to know what you want to do.

ISOM: No, your Honor. I'll plead guilty. I'll take the plea, and I'll just go do my time.

After Isom was sworn and stated that he intended to plead guilty, the issue of his defense re-emerged in the following exchange:

COURT: I want to ask you, are you satisfied with the representation that you've received?

ISOM: Yeah.

COURT: Well, earlier you told me that you weren't.

ISOM: Yeah. Your Honor, with all respects to the court. I just -- like -- I'm tired of fighting, and I'm not going to keep trying to make the situation no worse for myself. Like, I'm done. She did her job. You said she did her job. I'm fine.

COURT: All right. I will say for the record, as I did before, that I am satisfied that the federal defender's Office and Ms. McElroy has

-7-

provided you with adequate representation in this case and done what they should have done in terms of explaining to you the situation and your options about pleading guilty or not pleading guilty.

Now having said all of that, I want to make clear, again, with respect to this plea agreement, that you have had the chance to review the terms of the plea agreement, read it, you understand it; is that correct?

ISOM: Yes.

Isom was then asked about specific disagreements he had with the government's recitation of facts it would prove if the case went to trial. He said, "[F]or the most part, she, basically, explained exactly what I was guilty of and my role in the situation." The judge also asked whether Isom agreed that the drugs and apartment were his. Although he began his answer, "Basically, no," he continued:

> What I'm agreeing to was there was a conspiracy, and I used to buy cocaine from Mr. Mason, and I used to resell that cocaine. And this is, basically what my lawyer was explaining to me that the conspiracy showed I was guilty of. That apartment was not my apartment. The quantity of drugs I had no knowledge of until I was charged with those drugs. I agree that the Government had, basically, made its case, and I was guilty of distributing them drugs, and I was in conspiracy and the aiding and abetting, I agree to it. I just - - I didn't have the knowledge that the quantity of drugs were there. That wasn't to my knowledge. All's I knew was that I could get drugs from that residence at any given time, and I could make money off them.

After Isom indicated that he had no further comment on the recitation of facts, the court accepted his guilty plea.  At the government's request, Isom's sentencing was scheduled to take place after Mason's trial, to afford Isom the opportunity to offer cooperation with an eye towards lowering his sentence.  As will be shown below, however, that opportunity never arrived, due to certain events in Mason's case upon which Isom bases his appeal.

### III.  Khalid Mason's case

Prior to trial, Mason moved to suppress the drugs seized from 214 Pavilion Avenue.[5]  The stated basis for the motion was that the affidavit supporting the warrant application contained deliberate falsehoods which were part of a conspiracy between Providence Police Sergeant Scott Partridge, a local attorney (who had briefly represented Mason after his indictment), and the attorney's law partner and paralegal.  The gist of the scheme was that criminal defendants, or persons on their behalf, would pay the attorney and his cohorts either to bribe officials to drop the charges or plant evidence on third parties to enable the defendant to benefit through "cooperating" with authorities by providing information about the ersatz crime.  Mason, 497 F. Supp. 2d at 330.

---

[5]See United States v. Mason, 497 F. Supp. 2d 328 (D. R.I. 2007).

Isom theorizes that he and Mason were victims of the scheme and that the seized drugs were planted.[6]

While the district court noted that Mason's claim had an air of credibility because the attorneys and paralegal had all been indicted for a similar scheme, id. at 330-31,[7] the suppression motion was denied after a two-day hearing, as Mason was unable to implicate the affiant – Sergeant Partridge -- in the overall scheme, or in connection with any wrongdoing in Mason's case. Id. at 332 n. 3. The court concluded that there was "no credible evidence" that Partridge lied on the warrant affidavit. Id. at 332. Although denying the suppression motion, the court expressed great concern about "shoddy police work" uncovered during the suppression hearing. Id. Of particular concern was the "astonishing" testimony from Partridge and his partner that they "failed to contemporaneously document any single fact, aspect, or event in the ongoing investigation of Mason, Isom and the 214 Pavilion Avenue residence." Id. at 333.

---

[6]The "planted drugs" scenario is how Isom's appellate brief describes Mason's suppression claim. Yet Mason and his father testified at the suppression hearing that they paid the paralegal a "substantial amount of money" based on her assertion that the attorney "could make the charges go away" by bribing the officer with cash and a trip to the Super Bowl. Mason, 497 F. Supp. 2d at 331.

[7]The attorneys, paralegal and several others eventually pled guilty in Massachusetts federal court. See United States v. Cicilline, No. 1:07-cr-10008-NMG, (D. Mass. filed Jan. 24, 2007).

-10-

Isom, having already pled guilty, also testified at the suppression hearing. In addition to relating his contacts with the scheming attorney, Isom also reiterated and expanded upon his dissatisfaction with his own attorney, and stated that he "never dealt with [Mason] in a conspiracy" and the crack cocaine seized at 214 Pavilion Avenue was not his. On the other hand, he freely admitted that he had had a drug-dealing relationship with Mason, disputing only that it was operative at the time of his arrest in January 2004. In addition to directly conflicting with his plea agreement, Isom's testimony also contradicted a letter he had previously sent to probation officers in connection with their preparation of Isom's Presentence Investigation Report following his guilty plea. Seemingly seeking credit for acceptance of responsibility, Isom had written, "I fully and freely acknowledge that I conspired with Khalid Mason to possess cocaine base with the intent to distribute on January 16, 2004."[8]

The Mason saga did not end with the denial of the suppression motion, however. Mason's trial was scheduled to begin on August 20, 2007. Approximately one week in advance of trial -- but after the jury had been seated -- Partridge informed prosecutors that he had located in his home attic a box containing surveillance reports, notes and other reports related to the Mason

---

[8]Isom's objection to the Presentence Investigation Report did not take issue with the offense facts which were similar in all material respects to those presented at his change of plea hearing.

-11-

- Isom investigation.[9]  Instead of a trial, the government on August 20, 2007 filed a motion to dismiss the indictment against Mason with prejudice.  The trial court expressed skepticism as to whether such a drastic step was necessary, but ultimately granted the motion.[10]

### IV. Isom's motion to withdraw plea

Shortly after Mason's case was dismissed, Isom moved to continue his sentencing from its scheduled September date.  His motion referenced the events in Mason's case, and indicated that a motion to withdraw might be forthcoming.  In fact, such a motion was filed in November.  In addition to professing his innocence, Isom set forth three reasons in support of the motion:  1) that he entered his guilty plea without the government fully complying with its discovery obligations; 2) evidence discovered after the plea meant that the plea was not entered into knowingly, voluntarily or

---

[9]Isom does not dispute the government's contention that the documents located by Partridge were not exculpatory, but instead, tended to corroborate Partridge's version of events.  He does, however, suggest that the circumstances of their discovery calls their authenticity into question.

[10]Because Sergeant Partridge's discovery of the evidence at his home was so at odds with his insistence that he had never taken any notes or compiled any reports, the district court referred the matter to the United States Attorney's Office for investigation. After recusal by the District of Rhode Island office, the U.S. Attorney for the District of New Hampshire cleared Partridge of criminal wrongdoing, finding instead that his lack of diligence and confusion about record retention policies contributed to his failure to recall the existence of the evidence.  See U.S. Attorney, District of N.H., Report of Investigation, http://www.usdoj.gov/usao/nh/ReportPartridge.pdf (August 1, 2008).

intelligently; and 3) Partridge's conduct was so outrageous that it deprived Isom of his state and federal substantive due process rights.

After a hearing, the court rejected Isom's arguments and denied the motion to withdraw. During the hearing, the judge noted that the evidence against Isom included materials not within Partridge's sphere of influence, including a recorded confession taken after Isom's federal indictment,[11] Isom's letter to the probation office, and his statement at his change of plea hearing, where he stated, "I sold drugs with Khalid Mason." The district court also pointed out that, even under Isom's theory -- that Partridge lied at the suppression hearing about taking notes -- Partridge did not so testify until after Isom's plea. Therefore, the court concluded, Partridge's alleged credibility problem could not have affected the decision to plead, as the credibility issue did not yet exist. Moreover, the judge indicated that since the late-discovered documents were not exculpatory -- an assessment that Isom did not dispute -- it was unlikely that Isom would be successful in challenging the search warrant application if his plea were to be vacated, as Partridge's inaccurate testimony about

---

[11]In a recorded conversation with police -- not including Partridge -- Isom described a box on the front porch of 214 Pavilion Avenue in which Mason left crack cocaine for Isom to take if he needed it to sell, and where Isom would leave the money to pay for it.

-13-

his record-keeping was "separate and distinct" from his truthfulness on the warrant application.

Additionally, the court stated that any attempt to use the evidence-planting scheme as a basis for suppression would likely fail for Isom, for the same reasons as it did for Mason -- it could not be tied to the events in Isom's case. And to the extent that Isom claimed that although he conspired with Mason, he did not do so at the time of the drug seizure, the government noted that the indictment covered a period of time beginning before January 2004.[12]

Finally, the court rejected Isom's claim of actual innocence, first pointing to Isom's admissions, and then to the fact that if Isom had truly believed he was innocent -- and was not just seeking to capitalize on Mason's good fortune -- he would not have waited until seven months after his plea to seek its vacatur.

## V. Legal arguments

A. The appeal-waiver clause

As previously noted, Isom argues that his motion to withdraw his plea should have been granted, and alternatively, that his plea was legally invalid. The government's first argument in response is that we need not reach the substance of Isom's appeal because of the waiver clause in his plea agreement. We disagree,

---

[12]The indictment alleged that Isom, Mason and others conspired "Beginning on or about a date unknown to the grand jury and continuing until on or about January 16, 2004 . . . ."

-14-

concluding that while the waiver clearly barred an appeal by Isom of his sentence, it does not clearly extend to the issue central to this appeal -- the validity of the plea itself.

We review the validity of an appellate waiver in a plea agreement under the rubric set forth in United States v. Teeter, 257 F.3d 14, 25 (1st Cir. 2001). Appellate waivers are binding if: 1) the plea agreement clearly delineates the scope of the waiver; 2) the district court inquired specifically at the plea hearing about the waiver of appellate rights; and 3) the denial of the right to appeal would not be a substantial miscarriage of justice. See United States v. Edelen, 539 F.3d 83, 85 (1st Cir. 2008) (applying "Teeter test").

The ultimate purpose of this examination is to ensure that the defendant knowingly and voluntarily agreed to the plea's terms, Teeter, 257 F.3d at 24, but "[e]ven a knowing and voluntary appeal waiver only precludes appeals that fall within its scope." United States v. McCoy. 508 F.3d 74, 77 (1st Cir. 2007). As noted above, the critical language in Isom's agreement is as follows: "Defendant understands that Defendant may have the right to file a direct appeal from the sentence imposed by the Court. Defendant hereby waives defendant's right to file a direct appeal, if the sentence imposed by the Court is within the guideline range determined by the Court or lower." The government focuses on the second sentence, and argues that Isom has waived his right to file

-15-

any direct appeal, as he received a sentence below the guideline range that the district court eventually determined. This argument, however, ignores the first sentence of the quoted language which, to the contrary, suggests that Isom only waived his right to appeal his sentence. Some ambiguity is evident even in the relevant portion of the plea colloquy:

> COURT: Now, we talked earlier about appeal rights, and part of this plea agreement, which you have said you do want to got forward with, is that <u>you will forfeit your right to appeal with respect to the sentence if the Court imposes a -- you waive your right of direct appeal</u> if the sentence imposed by the Court is within the guideline range or lower. You understand that?
>
> ISOM: Yes.

(emphasis added).

Under the basic contract principles which we apply to the construction of plea agreements, we construe such ambiguities against the government. <u>United States</u> v. <u>Newbert</u>, 504 F.3d 180, 185 (1st Cir. 2007); <u>see</u> <u>United States</u> v. <u>Acosta-Roman</u>, 549 F.3d 1, 3 (1st Cir. 2008) ("[T]he scope of the waiver is simply a matter of what the parties agreed to in the particular case.") (<u>citing</u> <u>McCoy</u>, 508 F.3d at 77). Here, as evidenced by the trial court's hesitance, the waiver language quoted above leaves the scope of the waiver unclear, and "the government must shoulder a greater degree of responsibility for lack of clarity in a plea agreement."

Newbert, 504 F.3d at 185 (citing United States v. Giorgi, 840 F.2d 1022, 1026 (1st Cir. 1988)) (footnote omitted).

The government argues that in Edelen we approved and applied the identical waiver language present here. While it is true that the defendant in Edelen was subject to the same waiver language -- which we said "couldn't be clearer" -- the substance of that appeal involved claims of sentencing errors, 539 F. 3d at 84-85, and thus the ambiguity we are concerned with here played no role in that case.

Finally, we note the plethora of cases in which appeal waivers contain language which clearly, unambiguously, and without any apparent linguistic gymnastics, encompass issues beyond sentencing. See, e.g., Acosta-Roman, 549 F.3d at 3-4 ("The waiver provision in Acosta's plea agreement states that he waived his right to appeal his conviction and sentence . . . .") (emphasis added); Teeter, 257 F.3d at 26 ("defendant waives to the full extent of the law any right to appeal . . . the conviction and sentence, or the manner in which it was determined") (emphasis added); United States v. Soto-Cruz, 449 F.3d 258, 260 (1st Cir. 2006) ("defendant waive[d] and surrender[ed] his right to appeal the conviction and sentence") (emphasis added).

Here, by contrast, we lack confidence that Isom waived anything more than his right to appeal his sentence. Accordingly, we decline to apply the appeal-waiver clause of Isom's plea

-17-

agreement to this specific appeal.  As will be shown below, however, Isom does not prevail on the merits of his appeal.

B.  Motion to withdraw guilty plea

A defendant may withdraw a guilty plea before sentence is imposed if he shows "a fair and just reason for requesting the withdrawal."  United States v. Sousa, 468, F. 3d 42, 46 (1st Cir. 2006); Fed. R. Crim. P. 11(d)(2)(B).  The factors to be considered are whether the plea was voluntary, intelligent, knowing and in compliance with Rule 11; the strength of the reasons offered in support of the motion; whether there is a serious claim of actual innocence; the timing of the motion; and any prejudice to the government if the withdrawal is allowed.  United States v. Padilla-Galarza, 351 F.3d 594, 597 (1st Cir. 2003) (citing United States v. Marrero-Rivera, 124 F.3d 342, 347 (1st Cir. 1997)).

As Isom moved to withdraw his guilty plea prior to sentencing, we review the denial of the motion for abuse of discretion.  Sousa, 468 F.3d at 46.  The district court's factfinding supporting its denial of the motion can be set aside only for clear error.  Marrero-Rivera, 124 F.3d at 347.  If the court's "account of the evidence is plausible in light of the record reviewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Id. (quoting Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148,

152 (1st Cir. 1990)).  Our review of the record finds no abuse of discretion.

We have regularly noted that the "core concerns of Rule 11" -- whether the plea was voluntary, intelligent, and knowing -- are the most important factors to consider. E.g., United States v. Negron-Navarez, 403 F. 3d 33, 36 (1st Cir. 2005) (focus is on Rule 11 factors); United States v. Rodriguez-Leon, 402 F.3d 17, 22 (1st Cir. 2005) ("most significant factor"); United States v. Richardson, 225 F.3d 46, 51 (1st Cir. 2000) (same).

In this case, the district court engaged in a lengthy discussion with Isom after Isom expressed his concerns about his representation and his belief that he was not provided with appropriate discovery.  While we will address those particular issues in more depth, with respect to the "core concerns" of Rule 11, it is enough for us to note that on several occasions Isom explicitly stated that he was "ready" or "always willing" to plead guilty, and that on at least three occasions, the judge reminded Isom that he did not have to plead guilty.  Moreover, after Isom unequivocally responded to the court's inquiry by stating his intent to plead guilty, all of the factors in Fed. R. Crim. P. 11(b)(1)-(3) were addressed.  Specifically, Isom confirmed that he had received and reviewed the indictment and understood the charges contained therein, as well as understanding the elements of the offenses after they were explained by the prosecutor.

-19-

Next, as described in Part II, above, although Isom expressed some disagreement with the government's version of provable facts, he ultimately acknowledged that the prosecutor "basically explained exactly what I was guilty of and my role in the situation" and that "I agree that the Government had, basically made its case, and I was guilty of distributing them drugs, and I was in conspiracy and the aiding and abetting, I agree to it."

Additionally, Isom agreed that his decision to plead was voluntary, and that no promises or threats were made to induce him to do so. And finally, the Court explained the consequences of pleading guilty, including the loss of due process protections at trial and potential resulting civil rights losses, and the Court also described the effects of the sentencing guidelines and statutory minimum sentences. Against this factual backdrop, we are satisfied that Isom's plea met the concerns embodied in Fed. R. Crim. P. 11.

Beyond the Rule 11 factors, Isom argues on appeal that the motion should have been granted because Isom was asserting his innocence; because of government discovery delays; and because Partridge's testimony at Mason's suppression hearing damaged Partridge's credibility. We disagree. First, as the district court noted, Isom's claim of innocence flies in the face of several admissions to the contrary. The district court also supportably

found that Isom received all discovery to which he was entitled.[13]

Moreover, the court found -- and defense counsel did not contest -- that the newly discovered evidence was not exculpatory. Finally, even putting aside the fact that the district court stated that it would not have ruled any differently than it did in Mason if Isom had filed a suppression motion, Isom does not explain how the discovery of the inculpatory surveillance notes cast doubt on his guilt, nor can we discern any reason from the record. While Partridge's overall credibility might have been dented by the turn of events -- either because he was dishonest about the notes when he testified at Mason's suppression hearing, or generally sloppy about their safekeeping, or both -- there was evidence implicating Isom that did not involve Partridge, including Isom's own statements after he was federally indicted in 2006.[14] Accordingly, we find that the district court did not abuse its discretion in denying Isom's motion to withdraw his plea.[15]

---

[13]Echoing the comments made at the change of plea hearing, see Sec. II, supra, the government's objection to Isom's motion to withdraw contains a lengthy list of discovery materials provided to Isom three weeks prior to the date he signed the plea agreement, which was at least two weeks before the plea hearing itself.

[14]Isom suggests for the first time on appeal that his 2006 confession was obtained in violation of his Sixth Amendment rights. That argument was not raised in the district court, and thus we do not consider it. See United States v. Hernandez-Rodriguez, 443 F.3d 138, 143 n. 5 (1st Cir. 2006) (theories not raised in the district court cannot be raised for the first time on appeal).

[15]Both the district court and the government relied on the 11-month passage of time between the plea and the motion to withdraw

C. Validity of the plea

Apart from Isom's claim that the district court should have granted his motion to withdraw his guilty plea, Isom argues on appeal that his guilty plea was invalid. He sets forth three reasons in support of his position. First, he argues that the district court erred in finding -- as required by Fed. R. Crim. P. 11(b)(3) -- that there was a factual basis for the plea.[16] Next, echoing the argument made in support of the motion to withdraw, Isom claims that his plea was neither knowing nor intelligent. In a related vein, Isom also argues that his plea was not voluntary, because of the district court's "coercive tactics." We find all three claims unavailing.[17]

---

it as an indication that Isom was simply employing sharp tactics. Given that the motion was filed so soon after the events in Mason's case, we do not entirely agree with this characterization. In one respect, however, the delay works to Isom's detriment: his claim of innocence did not depend on the events in the companion case, but could have been raised earlier.

[16]The court found that Isom's plea "was supported by an independent basis in fact containing each of the essential elements of the offense."

[17]The government suggests that we review Isom's claim for plain error only. Isom does not posit a standard of review, but argues that his claim survives plain error review. While Rule 11(h) calls for harmless error review, where Isom did not object to the alleged Rule 11-related error in the district court, he must satisfy plain error review. United States v. Rivera-Maldonado, 560 F.3d 16, 19 (1st Cir. 2009) (citing United States v. Vonn, 535 U.S. 55, 59 (2002)). Regardless, the result here is the same under either standard. Indeed, we conclude that the district court committed no error.

Isom's first argument, that there was no factual basis for his plea, is premised on the claim that he never admitted that any dealings with Mason involved "50 or more grams" of crack cocaine, as the indictment alleged, and as the government stated it would prove if the case went to trial. The record tells a different story. After hearing the government's version of the facts, which tied Isom to the approximately 303 grams of crack seized from 214 Pavilion Avenue, Isom equivocated on his knowledge of the quantity seized. In the end, while pointing out that he did not know the precise amount seized, he said that he was "guilty of distributing them drugs, and I was in conspiracy and the aiding and abetting, I agree to it. I just - - I didn't have the knowledge that the quantity of the drugs were there. . . . I could get drugs from that residence at any given time and make money off them." Given this admission and the others detailed above, the fact that Isom did not know the precise amount seized on January 16, 2004, does not constitute a denial of the government's allegations. Moreover, as noted above, the Presentence Investigation Report contains the same facts, to which Isom filed no objection.[18]

---

[18]Isom also argues that, unless the defendant admits to the drug quantity in a case where the drug quantity qualifies the defendant for an enhanced sentence based on criminal history, there is no factual basis for the plea, because drug quantity is an element in such cases. He asserts that our cases holding that drug quantity is not an element of the offense and therefore need not be proven beyond a reasonable doubt, see United States v. Sanchez-Badillo, 540 F.3d 24, 34 (1st Cir. 2008), cert. denied, 129 S. Ct. 953 (2009), are either inapposite or are "incorrect and flawed."

Although not a model of clarity, Isom's next argument is that his plea was invalid because it was not "knowing or intelligent." The most specific claim is that he did not understand the law, or the law as it applied to the facts. While awareness of the elements of the charged offenses is a prerequisite to pleading guilty, cf. United States v. McMullin, 568 F.3d 1, 8 n.7 (1st Cir. 2009), the district court went to great lengths to address Isom's concerns. The change of plea hearing -- both before and after Isom was sworn in -- contains numerous examples of the court explaining to Isom the nature of the charges against him. Acordingly, we reject Isom's argument that his plea was "neither knowing nor intelligent."

Isom's final assertion is that the district court's "involvement" in the plea process amounted to "coercion" that rendered his plea involuntary. Rule 11(c)(1) prohibits the court from participating in plea discussions between the government and defense. Rather than focusing on participation, Isom points to various statements made by the court during the lengthy colloquy. For example, he assails the court's comments about his attorney's responsibility to "educate him." While Isom argues that the court was expressing the view that "it did not matter" if Isom understood the law, the record does not support this interpretation. Indeed,

---

In light of our holding that the record establishes a factual basis for the plea, we need not consider this argument.

Isom has pointed to no authority suggesting that the court's statement -- that counsel has no duty to educate the client to the same level as the attorney -- is incorrect. On the contrary, Isom's own brief cites to a provision of the Rhode Island Rules of Professional Conduct describing the lawyer's duty to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions . . . ." The record reflects that Isom's expectations went well beyond that duty, and that the court's comments were no more than an attempt to temper those expectations.

Isom also complains that the court's favorable comments about his attorney's performance amounted to improper participation in plea negotiations. We disagree. The court's comments expressing satisfaction with defense counsel's efforts at representation and explaining the charges against Isom came in response to Isom's complaints, and to the discovery issue as related by attorneys for Isom and the government. Isom fails to explain how the court's responses to the issues that arose during the plea hearing amounted to "participation," in violation of Rule 11(c)(1), See United States v. Pagan-Ortiz, 372 F.3d 22, 27 (1st Cir. 2004) (threshold question is whether comments were made during plea negotiations). Nor do they amount to coercion, where the judge did not threaten Isom with consequences if he did not plead guilty, express a preference as to one penalty over another, or attempt to shape the terms of the plea. See United States v.

<u>Bierd</u>, 217 F.3d 15, 21 (1st Cir. 2000) ("The rule against judicial participation in plea bargaining protects the parties against implicit or explicit pressure to settle criminal cases on terms favored by the judge.  It does not establish a series of traps for imperfectly articulated oral remarks.") (<u>quoting</u> <u>United States</u> v. <u>Frank</u>, 36 F.3d 898, 903 (9th Cir. 1994)).

Accordingly, we reject Isom's claim that his plea was invalid.

## VI.  Conclusion

For the reasons set forth herein, we hold that the appeal-waiver provision of Isom's plea agreement does not bar an appeal challenging the validity of his guilty plea.  On the merits, we hold that his plea was valid and affirm the district court's denial of his motion to withdraw his guilty plea.  The district court's judgment is **affirmed.**