**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 12-2039

UNITED STATES OF AMERICA,

Appellee,

v.

GILBERTO VARELA-RIVERA,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before
Torruella, Baldock,[*] and Kayatta,
Circuit Judges.

Rafael F. Castro Lang, for appellant.
Richard A. Friedman, Appellate Section, Criminal Division,
U.S. Department of Justice, with whom Rosa Emilia Rodríguez-Vélez,
United States Attorney, Mythili Raman, Acting Assistant Attorney
General, María L. Montañez-Concepción, Assistant United States
Attorney, District of Puerto Rico, and Denis J. McInerney, Acting
Deputy Assistant Attorney General, were on brief for appellee.

January 15, 2014

---

[*]Of the Tenth Circuit, sitting by designation.

**Baldock, Circuit Judge**.  On March 9, 2012, Defendant Gilberto Varela-Rivera pled guilty to possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A).  The Government agreed to recommend a sentence of 15 years' imprisonment in return for his plea.  Nearly two months later, Defendant requested new counsel and moved to withdraw his plea, arguing his public defender had coerced him into pleading guilty.  The district court denied Defendant's motion to withdraw his guilty plea and sentenced him to 20 years' imprisonment, which "include[d] a component for lying before the Court."  Defendant now appeals, arguing (1) the district court abused its discretion when it refused to grant Defendant's motion to withdraw his plea, and (2) his sentence is procedurally and substantively unreasonable.  Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.

                                    I.

     On December 19, 2011, Puerto Rico police officers entered a motel room where Defendant was sleeping after the motel manager called to report that Defendant had overstayed in the room.  Defendant never responded to manager or police efforts to communicate with him from outside the room.  When officers entered the room, they found Defendant sleeping with a loaded Glock handgun, modified to fire in automatic mode, lying next to him on the bed.  They also saw what was later proven to be about 125 grams

of marijuana and 17 grams of cocaine in various see-through containers. Defendant was initially indicted in Puerto Rico Commonwealth court; however, these charges were dismissed after the Commonwealth court concluded the motel manager and the police had violated Defendant's privacy rights when they entered the motel room. Federal authorities then arrested Defendant and indicted him on four counts, including possession of an automatic firearm in connection with a drug offense in violation of 18 U.S.C. § 924(c)(1). If Defendant had been convicted of this offense alone, he would have faced a mandatory minimum sentence of 30 years' imprisonment under 18 U.S.C. § 924(c)(1)(B)(ii).

Defendant moved to suppress under the Fourth and Fifth Amendments the gun, the drugs, and various incriminating statements he made during his arrest and booking. The district court scheduled a hearing on Defendant's motion for March 6, 2012, and Defendant's trial for March 7. On March 6, before the suppression hearing began, Defendant's public defender informed the court that he had just received in discovery from the Government evidence that Defendant may have told one of the booking officers that the police were lucky he was asleep when they entered the motel room because, if he had been awake, he would have shot them. In light of this new evidence, the public defender asked for a five-working-day continuance to "talk it over" with Defendant and "see if he still wishe[d] to proceed given this statement." The parties then

discussed Defendant's options, and the court held an off-record bench conference with the public defender. After this bench conference, the court explained to Defendant that if it held a suppression hearing, the hearing would amount to the police giving testimony, which Defendant's public defender could try to impeach or which Defendant himself could take the stand to try to contradict. The court then explained that if Defendant took the stand to argue his suppression motion, the police would impeach him with his criminal record and getting the court to believe his story rather than the Government's would be "pretty uphill" for him, given this record.[1] The court then postponed Defendant's trial until March 9 so Defendant and his public defender could "explore a disposition of this case that may dispense [with the] statutory minimum of 30 years, because of the firearm."

On March 9, 2012, Defendant executed a plea agreement under Fed. R. Crim. P. 11(c)(1)(B) whereby he pled guilty only to a charge of possession of a non-automatic firearm and the Government agreed to recommend a 15-year sentence. The court held a change-of-plea hearing that same day. The court advised Defendant of the purpose of the hearing, and the consequences of

---

[1] Although the court's statement here arguably could call its ability to be impartial into question and was therefore improper under 28 U.S.C. § 455(a), the statement did not "reveal an opinion that derives from an extrajudicial source [or] reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994).

pleading guilty.  Defendant twice confirmed at this hearing that his plea was voluntary and that he was satisfied with the work of his public defender.  Defendant also confirmed that he understood the rights he was waiving by pleading guilty.  When the court asked Defendant "has somebody threatened you or anybody else related to you in order to induce you to plead in this case?," he responded: "No."  When asked whether there was "anything that may still bother you in your mind," Defendant responded: "No.  It's fine."

Thirteen days later, on March 22, Defendant filed a pro se transcript request for the March 6 and March 9 hearings.  The court provided these transcripts on April 4.  Then, on May 4, Defendant moved to withdraw his guilty plea and obtain substitute counsel.  He argued his public defender had told him the district court would deny his suppression motion and sentence him to life if he did not plead guilty, but when he read the transcripts, he realized the court had said no such thing.  He therefore argued his public defender had misled and coerced him into pleading guilty. The public defender withdrew as defense counsel, citing the obvious conflict of interest, but offered to respond to the allegations related to the voluntariness of Defendant's plea if needed. Substitute counsel was then appointed, and filed a formal motion to withdraw Defendant's plea, stating Defendant only gave up on the suppression hearing and chose to plead guilty based on misstatements by his public defender.

At Defendant's August 1 sentencing hearing the court considered his motion to withdraw his plea. Defendant was sworn, and proceeded to renege on nearly all of the answers he gave at his change-of-plea hearing. He blamed his public defender for "intimidating" him into signing the plea agreement. He said he had lied to the court because of this intimidation. This was the only evidence Defendant advanced in furtherance of his motion to withdraw his plea. The court did not believe Defendant. It noted the public defender "was an extremely competent lawyer with a lot of experience gained in dealing with these kinds of cases," who "never, ever in his many appearances before the Court did anything other than defend zealously his clients." On the other hand, the court found Defendant had "no credibility whatsoever." The court thus denied Defendant's motion to withdraw his plea. Defendant's new counsel clarified that Defendant was initially satisfied with his public defender, but that after he went back and looked at the transcript from the suppression hearing he believed what his public defender had told him was inconsistent with what he read in the transcript. The court acknowledged this clarification, but did not change its mind. It then proceeded to sentencing.

Before sentencing Defendant, the court confirmed with the parties that "this case is totally non-guideline," and defense counsel agreed. The court then sentenced Defendant to 20 years' imprisonment—five years above the Government-recommended sentence.

-6-

The court based the sentence on a number of factors, including Defendant's prior convictions for robbery, murder, and attempted escape from prison. The court also noted this sentence "include[d] a component for lying before the Court." Defendant never objected to the sentence, nor the court's sentencing procedure.

## II.

We first address Defendant's motion to withdraw his guilty plea. Because Defendant "moved to withdraw his guilty plea prior to sentencing, we review the denial of the motion for abuse of discretion." United States v. Isom, 580 F.3d 43, 52 (1st Cir. 2009). In doing so, "we review credibility findings for clear error, a standard highly deferential to the district court's conclusions." United States v. Hart, 674 F.3d 33, 40 (1st Cir. 2012).

"A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if: . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d). In assessing whether a fair and just reason exists, we consider (1) whether the plea was voluntary, intelligent, knowing and in compliance with Rule 11; (2) the strength of the reasons offered in support of the motion; (3) whether there is a serious claim of actual innocence; (4) the timing of the motion; and (5) any prejudice to the

government if the withdrawal is allowed.  <u>Isom</u>, 580 F.3d at 52.[2]

Defendant never argued actual innocence, nor could he; we therefore

address the remaining four factors in turn.

A.

Defendant argues his plea was involuntary because his

public defender coerced him into pleading guilty by telling him the

district court would impose a life sentence unless he did so.[3] "The

burden is upon [Defendant], as the one attacking the plea, to show

the circumstances justifying relief from the plea . . . ."  <u>United

States</u>  v.  <u>Padilla-Galarza</u>,  351  F.3d  594,  598  (1st  Cir.

2003)(internal  citations  omitted).   Moreover,  "[o]rdinarily,  a

defendant is stuck with the representations that he himself makes

in open court at the time of the plea.  They are more likely to be

reliable than later versions prompted by second thoughts, and

guilty pleas—often in the defendant's interest—could hardly be

managed any other way."  <u>Id.</u>

---

[2]  The district court should ordinarily consider these factors in the first instance.  <u>United States</u> v. <u>Marrero-Rivera</u>, 124 F.3d 342, 347 (1st Cir. 1997).  Here, the district court failed to explicitly analyze these factors, but we need not remand.  As we shall explain, we are satisfied that Defendant did not meet his burden under these factors.

[3]  Defendant argues the sub-issue of his claim of coercion should be reviewed de novo.  We have not yet decided the applicable standard for such claims, and we need not do so now, as Defendant's claim fails under any of the applicable standards.  <u>See</u> <u>United States</u> v. <u>Rodríguez-Morales</u>, 647 F.3d 395, 397–98 (1st Cir. 2011).

Defendant provides no evidence to support his claim of coercion beyond his own sworn testimony. Defendant was free to call his public defender—indeed, the public defender offered to respond to the allegations related to the voluntariness of Defendant's plea—but he did not do so. Thus, the court faced two conflicting pieces of evidence in ruling on Defendant's motion. First, at the change-of-plea hearing, Defendant twice confirmed under oath that his plea was voluntary and that he was satisfied with his public defender's work. Second, five months later, Defendant testified under oath that he had lied to the court and his public defender had coerced him into signing the plea agreement. "We review credibility findings for clear error," Hart, 674 F.3d at 40, and, without more, we cannot say the district court clearly erred when it believed Defendant's initial representations—at the time of his plea—that he was not coerced or intimidated and later found Defendant had "no credibility whatsoever" when he attempted to change his story. As such, Defendant is stuck with the representations he made at the time of his plea.

Defendant also contends that he did not have time to review the plea agreement and that his public defender had coached him on how to respond at the change-of-plea hearing. He therefore argues his plea was unknowing. Defendant's "claim that he did not carefully review the written document and that his counsel coached

-9-

him as to the responses is not by itself enough to show that the plea was uninformed." Padilla-Galarza, 351 F.3d at 598. As in Padilla-Galarza, Defendant here confirmed with the court that he had "ample opportunity" to discuss his case and his decision to plead guilty with his public defender. Furthermore, the main terms of Defendant's agreement were spelled out by the judge in open court. See id. Thus, we conclude Defendant's original plea was voluntary, intelligent, knowing, and in compliance with Rule 11.

B.

Defendant offers two reasons to justify withdrawing his plea. The first is his allegation of coercion. As we discussed above, Defendant told the district court two contradictory stories, both times under oath, and the court had to choose which of his stories to believe. Thus, Defendant's coercion argument fails.

The second reason Defendant advances to support withdrawing his plea is that "two separate judges in the local courts had ruled in his favor" and found the motel manager and police had violated his privacy rights when they entered the motel room where he slept. In United States v. Muriel, 111 F.3d 975 (1st Cir. 1997), we addressed whether a potentially meritorious suppression motion based on an alleged defect in the search warrant that led to the defendant's arrest was a plausible reason to withdraw his plea. Id. at 978–79. We rejected this proffered reason because the defendant failed to demonstrate that there was

in fact a defect in the warrant.  Id. at 979.  True, the defendant bears the burden of proving a warrant is defective, whereas the Government here bears the burden of proving the lawfulness of a warrant-less search.  See United States v. Lopez, 380 F.3d 538, 543 (1st Cir. 2004).  Nevertheless, "[b]efore embarking upon the merits of a suppression challenge, a criminal defendant must show a reasonable expectation of privacy in the area searched and in relation to the items seized."  United States v. Aguirre, 839 F.2d 854, 856 (1st Cir. 1988).  Defendant fails to make this initial showing.

Defendant does not argue that he had a reasonable expectation of privacy in the motel room.  Indeed, the police entered hours after the time he had paid for had expired.[4] Furthermore, the motel manager and the police had tried repeatedly to contact Defendant from outside the room before entering. Instead, on appeal, Defendant merely relies on the favorable findings of two Commonwealth judges.  These judges' findings led to the dismissal of the original Commonwealth charges brought against

---

[4] Defendant admits in his opening brief that he only paid for one eight-hour rental of the motel room, which had expired over two hours before police entered.  Def's. Op. Br. at 5.  But he also drops a footnote in his brief stating he "claims he paid for two 8 hour periods."  Id. at 5 n.1.  Defendant never objected to the presentence report statement that he had overstayed in the motel room.  Furthermore, Defendant's uncorroborated statement that he paid for two eight-hour rentals comes from his sworn statement in furtherance of his effort to withdraw his plea, which the district court found had "no credibility whatsoever."

Defendant based on the gun and drugs found in the motel room. Defendant does not provide us with translations of these decisions, and the Spanish versions are beyond our review. See United States v. Rivera-Rosario, 300 F.3d 1, 5-6, 12 (1st Cir. 2002). The Government, however, provides us with a translation of the transcript of one of the Commonwealth judge's decisions. This decision concludes the police entrance of the motel room was unreasonable under "due process." The decision nowhere explains whether Defendant had a reasonable expectation of privacy in the motel room at the time the police entered. Furthermore, the decision nowhere cites the Fourth Amendment, or any other law for that matter.[5] Thus, like the defendant in Muriel, Defendant's unsupported claim regarding the violation of his privacy rights does not provide a plausible reason for withdrawal of his guilty plea.

## C.

A "two month lag between the plea hearing and appellant's motion to withdraw places it well within the area of vulnerability because of untimeliness." United States v. Pagan-Ortega, 372 F.3d 22, 31 (1st Cir. 2004); see also United States v. Ramos, 810 F.2d 308, 313 (1st Cir. 1987) (determining a thirteen-day delay between

---

[5] Indeed, even if the police violated Defendant's privacy rights under *Puerto Rico* law, this would not trigger the exclusionary rule. See Virginia v. Moore, 553 U.S. 164, 171 (2008).

hearing and motion to withdraw disfavored defendant). Here, Defendant waited 13 days before taking even the first steps toward withdrawing his plea—requesting transcripts of the March 6 and March 9 hearings—and he waited nearly two months before actually moving to withdraw his plea. Even if we attribute Defendant's delay to the challenges of communicating through the prison mail system, at most this means Defendant filed a timely motion to withdraw his plea that ultimately failed on the merits.

## D.

We "must weigh in the balance any demonstrable prejudice to the government" only where "the defendant carries the burden of persuasion on the aforementioned considerations." United States v. Marrero-Rivera, 124 F.3d 342, 347 (1st Cir. 1997). As discussed above, even assuming his motion to withdraw his guilty plea was timely, Defendant failed to carry his burden on any of the other aforementioned considerations. His plea was voluntary, intelligent, and knowing within the meaning of Rule 11; he does not proffer a plausible reason justifying withdrawal of his plea; and he cannot and does not assert actual innocence. As such, the district court did not abuse its discretion in denying Defendant's motion to withdraw his guilty plea.

## III.

Defendant also claims his 20-year sentence is both procedurally and substantively unreasonable. We review a sentence

first for procedural reasonableness, and if we are convinced no substantial procedural error was committed, we then review the sentence for substantive reasonableness. Gall v. United States, 552 U.S. 38, 51 (2007).

Defendant claims the district court committed procedural error by (1) "retaliating against [him] by imposing an additional five years' incarceration for having sought to withdraw the guilty plea under the guise of [finding Defendant] 'lied through his teeth'" and (2) basing the sentence on the court's "conscience and particular sensitivities." Defendant failed to object to the court's sentencing procedure below, so we review these claims only for plain error. United States v. Gilman, 478 F.3d 440, 445 (1st Cir. 2007). To establish plain error, Defendant must show: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

Although he does not expressly argue it, Defendant quotes precedent that states "the Court must compute the guidelines" at sentencing. Def's. Op. Br. at 25 (quoting United States v. Stone, 575 F.3d 83, 94 (1st Cir. 2009)). At sentencing, Defendant affirmatively agreed that his case was "totally non-guideline." Thus, any guideline-calculation argument Defendant may have had has

been waived and we see no reason to excuse the waiver in this case. Cf. United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011).

Returning to Defendant's two stated procedural arguments, Defendant first argues the court improperly imposed the five-year increase above the government-recommended sentence entirely based on Defendant's lying to the court. We have already established the district court did not clearly err when it found Defendant lied under oath while attempting to withdraw his plea. Further, a district court may properly increase a Defendant's sentence if it finds he committed perjury. See United States v. Grayson, 438 U.S. 41 (1978), superseded in unrelated part as stated in Barber v. Thomas, 560 U.S. 474 (2010). Moreover, Defendant's argument on this point is disingenuous because the district court based only "a component" of the sentence increase on the fact that Defendant had lied to the court. The rest of the increase the court justified based on the fact that Defendant had "violated parole . . . tried to escape prison . . . murdered people. You name it. Everything. Everything in the book he has done. Theft, burglaries, robberies, disguises. You name it. Everything." As such, the district court committed no error, let alone plain error, by increasing Defendant's sentence based on Defendant's perjury as well as his substantial criminal history.

Defendant next argues the district court improperly based his sentence on its "conscience and particular sensitivities." His argument is based on statements the court made in explaining why it would not promise to follow the government's 15-year sentence recommendation at the March 9 change-of-plea hearing. The court explained that it would not bind itself to follow a non-binding plea agreement, first, because it wanted "to be able to do what [its] conscience [said it] should do under the circumstances." Next the court explained that it would not relax its standards out of "fatigue." The court elaborated on this fatigue by recalling how, at one time, when one saw a story about a murder in the paper, one would be too upset to eat breakfast, but "[n]owadays people . . . count the drops of blood while they [drink their] coffee."

Even if these statements were improper, they did not amount to error that was clear and obvious. "A [court]'s views on matters of law and policy ordinarily are not legitimate grounds for recusal, even if such views are strongly held." United States v. Snyder, 235 F.3d 42, 48 (1st Cir. 2000). Moreover, this does not strike us as a case where the court was "unable to put aside [its] personal convictions in order to carry out the law. . . ." Id. The court made these statements at Defendant's change-of-plea hearing, nearly five months before it sentenced Defendant and in response to the public defender's attempt to get the court to

-16-

indicate in advance the sentence it would impose.  When the court later sentenced Defendant, it made no reference to its conscience or to how one should feel when reading about a murder in the news. Rather, the court based Defendant's sentence on his substantial criminal record and the fact that he had committed perjury in attempting to withdraw his plea.  Even assuming the court erred by using social commentary to explain why it would not rubber-stamp a non-binding sentence recommendation, the error was not clear and obvious, and thus did not rise to the level of plain error.

Finally, Defendant contends his sentence is substantively unreasonable.  Because Defendant did not object to the substantive reasonableness of his sentence before the district court, we review it only for plain error.  United States v. Tavares, 705 F.3d 4, 33 (1st Cir. 2013) cert. denied, 133 S. Ct. 2371 (2013) and cert. denied, 134 S. Ct. 450 (2013).  "When it comes to substantive reasonableness, 'a sentencing court's ultimate responsibility is to articulate a plausible rationale and arrive at a sensible result.'" United States v. Rodriguez-Reyes, 714 F.3d 1, 11 (1st Cir. 2013)(quoting United States v. Carrasco-de-Jesús, 589 F.3d 22, 30 (1st Cir.2009)).

Defendant cannot show his sentence was substantively unreasonable.  The undisputed offense conduct in Defendant's presentence report shows police found him sleeping with an automatic firearm and a large quantity of drugs.  Had he been

convicted of the automatic firearm offense alone, he would have faced a mandatory minimum 30-year sentence. Ultimately, Defendant pled guilty to possession of a non-automatic firearm with a statutorily imposed sentencing range of five years to life imprisonment. The Government agreed to recommend a 15-year sentence. The court, however, articulated a plausible rationale for adding another five years: Defendant's perjury and substantial criminal history. Given the statutory sentencing range of five years to life, and Defendant's perjury and substantial criminal history, we cannot say Defendant's 20-year sentence was not a sensible result, especially on plain error review.

Accordingly, Defendant's conviction and sentence are AFFIRMED.