# United States Court of Appeals
## For the First Circuit

No. 17-1683

UNITED STATES OF AMERICA,

Appellee,

v.

BRIAN POWELL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Torruella, Kayatta, and Barron,
Circuit Judges.

Jeffrey W. Langholtz for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom
John J. Farley, Acting United States Attorney, was on brief, for
appellee.

July 16, 2018

**BARRON**, **Circuit Judge**.   Brian Powell appeals his conviction based on his guilty plea for production of child pornography in violation of 18 U.S.C. § 2251(a).   Because we see no error in the District Court's ruling denying his motion to withdraw his guilty plea, we affirm the conviction.

**I.**

On April 19, 2016, the government filed a one-count information against Brian Powell, alleging that he had produced child pornography in violation of 18 U.S.C. § 2251(a).   On May 2, 2016, Powell pleaded guilty to that count.   At the plea hearing, the government offered the following facts in support of the charge.

Omegle is a chat website that allows users to see each other and "chat" using their computers' video cameras and through instant messaging.   In July 2015, Powell used Omegle to produce child pornography by initiating sexually explicit video-chats with minors[1] and recording a number of video chats as they appeared on

---

[1] The District Court noted that the government had not adduced evidence demonstrating that at least one individual depicted in the screenshots was a minor, because the individual was not identified.   The Court then confirmed with Powell's counsel that he had "reviewed this issue with [Powell] and [was] satisfied . . . [that Powell] understands that the government would have to prove that this was a minor child and he is not prepared to contest the government's contention on that point[.]"   Powell's counsel then confirmed that he had spent "as much time as [he] needed with the forensic detective" reviewing the images and discussed the matter with Powell in discussing his decision whether to plead guilty.

his screen.  He then stored those recordings on his personal computer.

Before taking Powell's plea, the District Court engaged him in a colloquy pursuant to Rule 11 of the Federal Rules of Criminal Procedure in which, among other things, he was asked if he "disagree[d] with anything that [the prosecutor] ha[d] said," and Powell confirmed that he did not.  See Fed. R. Crim. P. 11. The District Court also confirmed that Powell understood the potential sentence that he was facing and how that sentence would be calculated.  Powell was next asked if he was "satisfied with the legal advice [he had] received from [his] attorney," to which Powell responded that he was.  The District Court also asked Powell's attorney if "to [his] knowledge, is [Powell] pleading guilty because of any illegally obtained evidence in the government's possession?"  Powell's attorney replied that he "did not believe" so.  At the end of the colloquy, the District Court accepted Powell's guilty plea.

Nevertheless, many months later, on February 17, 2017, Powell filed a motion to withdraw his guilty plea.  He alleged in that motion that his Fourth Amendment rights had been violated because Omegle had forwarded screenshots it had collected of Powell's chat sessions and the IP address used for them to the National Center for Missing and Exploited Children (NCMEC), which had then viewed those screenshots and forwarded the IP address and

the screenshots to law enforcement.  Powell argued that his counsel, in advising him with respect to the guilty plea, had provided him with ineffective assistance of counsel in violation of his Sixth Amendment right to counsel, see Strickland v. Washington, 466 U.S. 668, 697 (1984), by not having moved pursuant to the Fourth Amendment to suppress the evidence that Omegle had sent to NCMEC.

The District Court acknowledged that Powell would be entitled to withdraw his guilty plea if his counsel had failed to file a meritorious suppression motion, and so it held a hearing to address the potential merits of any such motion.  At that hearing, the District Court adduced the following undisputed facts.

Powell's solicitation of child pornography was picked up through Omegle's systematic review process.  In this process, Omegle automatically records periodic screenshots of users' video chats.  Omegle employees then review these records and forward images that employees suspect of being child pornography to NCMEC, an entity that "is statutorily obliged to maintain an electronic tip line . . . to report possible Internet child sexual exploitation violations to the government."  United States v. Ackerman, 831 F.3d 1292, 1296 (10th Cir. 2016), reh'g denied (Oct. 4, 2016).  NCMEC employees then view the images and run the corresponding IP addresses through a publicly-available system to

identify the source's geographic location.  NCMEC then passes those images and the IP address on to law enforcement.

Omegle followed this process in this case.  During Powell's online interactions, Omegle automatically took screenshots.  Omegle staff then reviewed these screenshots, along with information about Powell's IP address and webcam.  An Omegle employee identified the screenshots as containing possible child pornography.  Omegle submitted the screenshots and computer and webcam information to NCMEC.  NCMEC reviewed those screenshots and determined that they contained child pornography.  NCMEC also identified Powell's geographic area based on his IP address.  NCMEC forwarded the screenshots and IP information to law enforcement.

On these facts, the District Court denied Powell's motion on May 25, 2017, because it found that the only information that NCMEC obtained from Omegle was information that Omegle had viewed through its own independent searches prior to providing that information to NCMEC.  It thus concluded that NCMEC had not violated Powell's Fourth Amendment rights.  Powell now brings this appeal from that ruling.

## II.

Our review of "a district court's denial of a motion to withdraw [a guilty plea is] for abuse of discretion."  United States v. Dunfee, 821 F.3d 120, 127 (1st Cir. 2016).  In making that assessment, we consider "the strength of the reasons offered

- 5 -

in support of the motion," United States v. Isom, 580 F.3d 43, 52 (1st Cir. 2009), recognizing that the motion should be permitted "if the defendant offers 'a fair and just reason'" for the motion. United States v. Sousa, 468 F.3d 42, 46 (1st Cir. 2006) (quoting Fed. R Crim. P. 11(d)(2)(B)).  In determining whether the defendant offered such a "fair and just reason," our review of the District Court's legal conclusions in denying a motion to withdraw is de novo.  United States v. Gates, 709 F.3d 58, 69 (1st Cir. 2013).

We have explained that when a defendant seeks to withdraw a guilty plea based on a claim of ineffective assistance of counsel under the Sixth Amendment, that defendant must make two showings. First, he must demonstrate "that counsel's representation 'fell below an objective level of reasonableness.'"  United States v. Pellerito, 878 F.2d 1535, 1538 (1st Cir. 1989) (quoting Hill v. Lockhart, 474 U.S. 52, 57-59 (1985)).  Second, he must show that the "counsel's deficient performance resulted in prejudice -- that is, 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  United States v. Mercedes-De La Cruz, 787 F.3d 61, 67 (1st Cir. 2015) (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)).

Powell agrees that, in accord with these requirements, he can succeed on his challenge to the denial of his motion to withdraw his guilty plea only by showing that the motion to

suppress that he contends that his counsel should have filed would have been meritorious. Mercedes-De La Cruz, 787 F.3d at 67.[2] But, for the reasons that we now explain, we conclude that he has failed to show that it would have been.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. This protection applies when "the person invoking its protection can claim a . . . 'legitimate expectation of privacy' that has been invaded by government action." Smith v. Maryland, 442 U.S. 735, 740 (1979).

The parties do not dispute that Powell had a reasonable expectation of privacy in the screenshots of his Omegle video chat conversations. They also do not dispute that Omegle, under our precedent, was not acting as a governmental entity or agent, United States v. Cameron, 699 F.3d 621 (1st Cir. 2012). Nor do they dispute that, for all relevant purposes, NCMEC was. What they do

---

[2] Powell also gestures at an argument that his counsel's performance was ineffective because, relying on United States v. Cavitt, 550 F.3d 430, 441 (5th Cir. 2008), Powell's counsel did not provide him with the opportunity to adequately review discovery before he accepted a guilty plea. However, even were this argument not waived for lack of development, see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), he clarified at oral argument that his ineffective assistance of counsel argument was not based on inadequate access to discovery, but rather solely the failure to file a suppression motion that would have been successful. We thus do not need to address that argument here.

dispute is whether NCMEC's warrantless viewing of the screenshots and its review of the other related information that Omegle had sent to NCMEC requires the suppression of that evidence.

Powell contends, pursuant to what is known as the private search doctrine, that a motion to suppress that evidence would have been successful. The private search doctrine provides that, if a private actor (such as Omegle) searches evidence in which an individual has a reasonable expectation of privacy, and then provides that evidence to law enforcement or its agent (such as, in this case, NCMEC), "[t]he additional invasions of [the individual's] privacy by the government agent must be tested by the degree to which they exceeded the scope of the private search." United States v. Jacobsen, 466 U.S. 109, 115 (1984).

Under this doctrine, there is no Fourth Amendment violation if the search by law enforcement or its agent is coextensive with the scope of the private actor's private search and there is "a virtual certainty that nothing else of significance" could be revealed by the governmental search. Id. at 119; accord Ackerman, 831 F.3d at 1306. But if, instead, that search "exceed[s] the scope of the private search," then the government must have "the right to make an independent search" under the Fourth Amendment in order for that search to comport with the Constitution. Jacobsen, 466 U.S. at 116.

- 8 -

Powell argues that NCMEC's search of the screenshots exceeded the scope of Omegle's private search, and he relies for that contention on the Tenth Circuit's decision in United States v. Ackerman, 831 F.3d 1292 (10th Cir. 2016). But that case does not help him.

In Ackerman, the defendant's internet service provider (ISP) employed an "automated filter designed to thwart the transmission of child pornography" through the use of "hash value matching." Ackerman, 831 F.3d at 1294. "A hash value is (usually) a short string of characters generated from a much larger string of data (say, an electronic image) using an algorithm -- and calculated in a way that makes it highly unlikely another set of data will produce the same value." Id. Ackerman's ISP's hash value matching protocol identified an attachment to Ackerman's email as potentially child pornography and automatically forwarded that email and its attachments to NCMEC. Id. NCMEC employees then viewed Ackerman's email and attachments before passing this material on to law enforcement. Id.

The Tenth Circuit, on the understanding that Ackerman had a reasonable expectation of privacy in his emails, id. at 1304-05, concluded that NCMEC's viewing of the email and attachments without a warrant violated the Fourth Amendment because the ISP had "never opened the email itself. Only NCMEC did that, and in at least this way exceeded rather than repeated [the ISP's] private

- 9 -

search." Id. at 1306. Nor, Ackerman reasoned, was there "any doubt NCMEC's search of the email itself quite easily 'could [have] disclose[d]' information previously unknown to the government besides whether the one attachment contained contraband." Id. (quoting Jacobsen, 466 U.S. at 122) (alterations in original).

The images of the screenshots that NCMEC viewed in Powell's case, however, were precisely the ones that had already been viewed by the private actor, Omegle. And, given the form in which NCMEC received that material, NCMEC's viewing of those images could not have disclosed any "fact previously unknown." Jacobsen, 466 U.S. at 122; see also Ackerman, 831 F.3d at 1306. Thus, under the private search doctrine as Jacobsen defines it, Powell has failed to show that his Fourth Amendment rights were violated.

Powell does suggest, in cursory fashion, that subsequent developments in Fourth Amendment jurisprudence cast doubt on the applicability of the private search doctrine in the digital age, such that the screenshots might need to be suppressed even though NCMEC did not exceed the scope of the search conducted by Omegle. But while he cites in general terms to United States v. Jones, 565 U.S. 400, 417 (2012), and what was the then-pending case of Carpenter v. United States, No. 16-402, ___ U.S. ___ (2018), he fails to explain how these cases, neither of which (at least directly) concern the private search doctrine, bear on Jacobsen's

application here.  Thus, any argument along those lines is waived

for lack of development.  <u>Zannino</u>, 895 F.2d at 17.

### III.

The conviction is **<u>affirmed</u>**.