# United States Court of Appeals
## For the First Circuit

No. 17-2042

UNITED STATES OF AMERICA,

Appellee,

v.

ANIBAL ORSINI, a/k/a Ruben Guerrero, a/k/a Jay, a/k/a Jay South,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Thompson, Circuit Judges.

Elizabeth Latif on brief for the appellant.
Halsey B. Frank, United States Attorney, and Julia M. Lipez,
Assistant United States Attorney, on brief for appellee.

October 26, 2018

**SELYA**, **Circuit Judge**. During the sentencing phase of his criminal case, defendant-appellant Anibal Orsini repeatedly agreed that he should be sentenced as a career offender. See USSG §4B1.1. Taking the appellant at his word, the district court — after independently finding that the appellant's criminal record qualified him for career offender status — sentenced him as such to a 188-month term of immurement. On appeal, the appellant has suffered an attack of buyer's remorse: he argues for the first time that his prior criminal record does not include predicate convictions sufficient to rank him as a career offender. The government says that he has waived this argument.

The orderly administration of justice depends upon a network of rules. The waiver rule is an important component of this network, and we agree with the government that waiver principles are apposite here. Applying those principles, we discern no reason to allow the appellant to shed the consequences of his waiver as easily as an iguana sheds its skin. Because the appellant has waived his "career offender" argument and has made no showing sufficient to excuse that waiver, we affirm the challenged sentence.

## I. BACKGROUND

We briefly rehearse the travel of the case. The appellant was arrested and indicted in the aftermath of a major drug-trafficking investigation spearheaded by federal authorities.

- 2 -

On March 28, 2017, he pleaded guilty to a single count of conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin and detectable quantities of cocaine hydrochloride and fentanyl. See 21 U.S.C. §§ 841(a)(1), 846. The probation department prepared a presentence investigation report (PSI Report), which recommended among other things that the appellant be sentenced as a career offender. See USSG §4B1.1. The PSI Report premised this recommendation on three predicate convictions reflected in the appellant's prior criminal record: a 2002 Massachusetts drug-trafficking conviction, a 2012 New Hampshire sale-of-controlled-substance conviction, and a 2013 Massachusetts drug-distribution conviction.

The appellant objected to the PSI Report, but his objections did not directly contest the career offender enhancement. Rather, they centered around his claim that a number of crimes attributed to him by the probation department (not including the putative predicate-offense convictions) were actually committed by another individual. Wiping away the fruits of this mistaken identity, the appellant argued, would reduce his criminal history score and, thus, reduce his criminal history category.

The probation department sustained this objection in part; it agreed that some of the reported offenses had been perpetrated by someone else and should not be attributed to the

appellant. But because the appellant did not challenge any of the three specified career offender predicates, the revised PSI Report continued to recommend that the sentencing court treat him as a career offender.

The appellant also objected to the total drug quantity and resulting base offense level, see USSG §2D1.1(c), as well as to proposed firearms and role-in-the-offense enhancements, see id. §§2D1.1(b)(1), 3B1.1(b). Notwithstanding the appellant's misgivings, the probation department declined to consent to any further changes to the PSI Report.

The district court held a conference on August 10, 2017, to "find out what is in dispute before the [sentencing] hearing." The court began by questioning the relevance of the appellant's remaining identity-based objections, pointing out that those objections, even if sustained, would not alter the appellant's criminal history category (which would, in any event, be a function of his career offender status).[1] Defense counsel took no issue

---

[1] Of course, sustaining the appellant's identity-based objections to additional convictions would have reduced the number of criminal history points attributable to him and, thus, lowered his criminal history score. See USSG §4A1.1. But any such revised calculations would not have affected his criminal history category. After all, once a district court classifies a defendant as a career offender, the sentencing guidelines dictate the defendant's placement in criminal history category VI, regardless of his criminal history score. See id. §4B1.1(b). Thus, the appellant's criminal history category would not have been affected by the elimination of the additional convictions.

with this statement. When the court later repeated that the identity-based objections would "not affect [the appellant's] criminal history category in light of the career offender provisions," counsel acknowledged that the court was "correct."

The court proceeded to address the drug-quantity issue and the proposed enhancements. It noted, however, that even using a drug-quantity figure satisfactory to the appellant, his career offender status would yield a significant guideline sentencing range (188-235 months). For that reason, the court suggested that the parties eschew any further wrangling over either drug quantity or enhancements and simply stipulate to the 188-235 month range. The parties accepted the court's suggestion and, as a result, the government abandoned its pursuit not only of an increased drug quantity but also of the proposed enhancements — revisions that would have more than doubled the guideline sentencing range.

The record makes manifest that, by this time, the court had indicated that it planned to classify the appellant as a career offender and the appellant had affirmed his career offender status. Consistent with this affirmation, the court repeatedly referred, during the pre-sentence conference, to the parties' agreement with respect to career offender status and to the court's intention to sentence the appellant as a career offender. The appellant never demurred. To cinch matters, his counsel explicitly stated: "I should be clear on the record. Based on the current law . . . and

based on his convictions as they currently stand he is a career offender."

On October 16, 2017, the district court convened the disposition hearing. Without objection, the prosecutor submitted exhibits substantiating the predicate-offense convictions on which the appellant's career offender designation hinged. The prosecutor added that both sides "agree on the career offender guideline range" and that the remaining factual objections to the PSI Report need not be resolved. Defense counsel joined the chorus, responding "[t]hat is correct, [y]our [h]onor." In addition, the appellant personally agreed that he was a career offender. Last but not least, the appellant's counsel straightforwardly told the court — immediately prior to the appellant's allocution — that "Mr. Orsini is clearly a career offender."

The district court found the appellant to be a career offender and imposed a bottom-of-the-range term of immurement (188 months). This timely appeal ensued.

## II. ANALYSIS

In this venue, the appellant is represented by new counsel. As framed, his appeal raises only a single issue. Despite his earlier acknowledgement that he should be sentenced as a career offender, the appellant assigns error to the district court's treatment of him as such.

Under the sentencing guidelines, career offender status automatically results in a criminal history category of VI (the highest category available).  See USSG §4B1.1(b).  A defendant is subject to classification as a career offender if (1) he was at least eighteen years old at the time he committed the offense of conviction; (2) that offense was either a felony crime of violence or a felony controlled substance offense; and (3) his conviction followed "at least two prior felony convictions of either a crime of violence or a controlled substance offense."  Id. §4B1.1(a). In the case at hand, the appellant plainly meets the age requirement, and his offense of conviction plainly qualifies as a felony controlled substance offense.  However, he claims for the first time on appeal that two of the three predicate convictions denominated in the PSI Report — his 2002 Massachusetts drug-trafficking conviction and his 2012 New Hampshire sale-of-controlled-substance conviction — fail to qualify as career offender predicates.  This claim beckons us down the long and winding path along which federal courts must use either a categorical or modified categorical approach to compare a state crime to its generic federal counterpart.  See, e.g., Descamps v. United States, 570 U.S. 254, 260-61 (2013); United States v. Dávila-Félix, 667 F.3d 47, 55-56 (1st Cir. 2011).

Here, however, we need not set out on such a stroll. The appellant's claim of error does not get out of the starting

gate. The government submits that the claim was waived, and we agree.

We have made it luminously clear that "[a] party waives a right when he intentionally relinquishes or abandons it." United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002). As a general rule, a waived claim is unreviewable and, thus, cannot be revisited on appeal. See id. Though the effects of a waiver are sometimes harsh, the costs are justified by the systemic benefits: the rule of waiver is critically important to the orderly administration of justice. Nor is waiver a quixotic procedural trick: the waiver rule is grounded in principles of "fairness, judicial economy, and practical wisdom." Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 627 (1st Cir. 1995).

Waivers allow trial courts to narrow the issues and concentrate scarce judicial resources on genuinely contested matters — and when a trial court makes a reasoned decision, it is unfair to allow a party to subvert that decision by resurrecting a waived claim. See United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011) (characterizing waivers as "undertakings [that] are critical in managing the business of courts"). Given the importance of waivers in the fabric of litigation, it is not surprising that appellate courts normally enforce waivers with "near-religious fervor." Nat'l Ass'n of Soc. Workers, 69 F.3d at 627.

It follows, we think, that when a party explicitly affirms a fact in the district court, that party risks waiving "both existing and yet-to-be-recognized rights." United States v. Bauzó-Santiago, 867 F.3d 13, 24 (1st Cir. 2017) (quoting Torres-Rosario, 658 F.3d at 116). For example, a defendant who "accepts the probation department's configuration of the sentencing record . . . can scarcely be heard to complain when the sentencing court uses those facts in making its findings." United States v. Turbides-Leonardo, 468 F.3d 34, 38 (1st Cir. 2006) (quoting United States v. Morillo, 8 F.3d 864, 872-73 (1st Cir. 1993)). So, too, "[a] party who identifies an issue, and then explicitly withdraws it, has waived the issue" and cannot resurrect it on appeal. Rodriguez, 311 F.3d at 437.

The doctrine of waiver fits this case like a glove. The record makes pellucid that the appellant's career offender status was referenced no fewer than ten times over the course of two sentencing hearings. Throughout, the appellant's counsel repeatedly and unequivocally affirmed that the appellant should be sentenced as a career offender, and the appellant himself reprised this affirmation. Nor does the record leave any room for doubt that both the appellant and his counsel knew the significance of the career offender provision in relation to his sentencing exposure.

Here, moreover, opting to affirm his career offender status appears to have been a deliberate stratagem designed to give the appellant a distinct tactical advantage. The appellant agreed that he should be sentenced as a career offender and, in return, the government agreed not to press either for an increased drug quantity or for role-in-the-offense and firearms guideline enhancements — items that had the potential, collectively, to boost the top of the applicable guideline sentencing range from 235 months to 480 months. This quid pro quo exchange makes evident that the appellant intentionally relinquished the claim that he now seeks to resurrect. On this record, waiver is manifest. See United States v. Eisom, 585 F.3d 552, 556 (1st Cir. 2009) (finding defendant waived particular sentencing claim when he objected below and then withdrew his objection); Rodriguez, 311 F.3d at 437 (similar); cf. Torres-Rosario, 658 F.3d at 116 (observing that defendant's express affirmation of basis on which he was sentenced ordinarily amounts to a waiver).

In an effort to blunt the force of this reasoning, the appellant argues that his unresolved factual objections to the PSI Report were sufficient to preserve the claim he now advances. This argument is belied by his representation to the court below that those objections impacted only his criminal history score and not his career offender status. Indeed, when confirming to the district court that the appellant was "a career offender," his

- 10 -

counsel expressly stated that "the [criminal history] points . . . don't matter." Given the lack of any fit between the preserved objections and the waived claim of error that the appellant now seeks to revivify, the appellant's argument fails.

The appellant has a fallback position. He suggests that even if his late-blooming argument against career offender status was waived, that waiver ought to be excused. This suggestion lacks substance.

To be sure, the waiver rule may "admit[] of an occasional exception" in extraordinary circumstances. Nat'l Ass'n of Soc. Workers, 69 F.3d at 627. Such exceptions, though, are hen's-teeth rare: they are granted, in the appellate court's discretion, only sparingly, and when the "equities heavily preponderate in favor of such a step." Id. In deciding whether an exception is warranted, we may consider factors "such as whether the inadequately preserved arguments are purely legal, are amenable to resolution without additional factfinding, are susceptible to resolution without causing undue prejudice, are highly convincing, are capable of repetition, and implicate matters of significant public concern." Sindi v. El-Moslimany, 896 F.3d 1, 28 (1st Cir. 2018). We likewise may consider whether waiver of the claim below "yielded [a] tactical advantage to the defendant[]." Nat'l Ass'n of Soc. Workers, 69 F.3d at 628. So, too, we may consider whether an

intervening change in the law may have a substantial bearing on the equities. See Torres-Rosario, 658 F.3d at 115-16.

Viewed against this backdrop, there is good reason to hold the appellant to the consequences of his waiver. His claim is dubious;[2] it is focused on the idiosyncratic circumstances of his own situation; it implicates no matters of significant public concern; and it does not rest upon any intervening change in the law. Moreover, waiving a challenge to his career offender status provided the appellant with a substantial benefit at sentencing: it deterred the government from its quest for a much more onerous guideline sentencing range. Allowing the appellant to reverse his field and belatedly attack his career offender designation would unfairly prejudice the government. Where, as here, a party makes a strategic choice to relinquish a known claim in exchange for a perceived advantage and the trial court acts upon that waiver,

---

[2] It is not at all clear that the district court was wrong to classify each of the three enumerated convictions as predicate controlled substance convictions under the career offender provision. Even now, the appellant does not challenge one of the predicates (the 2013 Massachusetts drug-distribution conviction), and his challenge to the others is bereft of any controlling or convincing authority in support of his position. His principal plaint asks us to apply the analysis used in Harbin v. Sessions, 860 F.3d 58, 63-65 (2d Cir. 2017), to predicate-offense convictions under Massachusetts and New Hampshire law, respectively. Harbin, however, was decided before the appellant was sentenced and embodies an analysis particularized to the structure of a New York statute — a structure that is plainly distinct from that of the Massachusetts and New Hampshire statutes upon which the appellant's earlier convictions rest.

appellate judges should be reluctant to allow the waiving party a second bite at the cherry.  Nothing in the record of this case suffices to overcome that reluctance.

That ends this aspect of the matter.  Concluding, as we do, that the equities preponderate heavily in favor of enforcing — not excusing — the waiver, we decline the appellant's invitation to relieve him of the consequences of his own admissions.

## III. CONCLUSION

We need go no further.  Waived claims are unreviewable, see Rodriguez, 311 F.3d at 437, and the glove, fitting, must be worn.  Accordingly, the appellant's sentence is

**Affirmed.**