# United States Court of Appeals
## For the First Circuit

No. 22-1763

UNITED STATES OF AMERICA,

Appellee,

v.

FRANCIS CAHILL, a/k/a Bruce Cossett,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Barron, Lynch, Howard,
Circuit Judges.

Theodore M. Cooperstein, with whom Susan J. Clouthier and Clouthier Cooperstein PLLC were on brief, for appellant.
Brian S. Kleinbord, Assistant United States Attorney, with whom Darcie N. McElwee, United States Attorney, was on brief, for appellee.

October 26, 2023

**LYNCH**, **Circuit Judge**.  Defendant Francis Cahill pleaded guilty to one count of possession of a firearm by a convicted felon.  See 18 U.S.C. § 922(g)(1).  The district court sentenced him to a 72-month term of imprisonment, varying upward from the applicable guideline sentencing range (GSR).  On appeal, Cahill challenges the court's acceptance of his guilty plea and its sentence.  We conclude that there was no error and affirm the sentence and conviction.

## I.    Background

Where, as here, the defendant challenges the district court's sentencing and its acceptance of his guilty plea, "we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSR), and the record of the disposition hearing."  United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).  Neither party in this case objected to the revised presentence report, upon which we rely.

Francis Cahill was born in Vermont in 1949.  In 1978, at 28 years old and after a decade spent accruing multiple convictions for assault, burglary, robbery, and other crimes, Cahill was convicted in Texas of murdering his father-in-law.[1]

---

[1]    Cahill maintains that the gun at issue was defective and had discharged accidentally while he was out hunting with the victim.  His account is directly contradicted by what the victim's

- 2 -

Ten years later, he was paroled to the State of Vermont, from which he absconded in May of 1991.

In July 1992, Cahill was convicted of possessing firearms as a felon, in violation of 18 U.S.C. § 922(g), in the United States District Court for the District of Vermont. Because this appeal involves Cahill's second conviction under that statute, we briefly recount the details of that first case.

Cahill was accused of possessing no fewer than four firearms between March of 1990 and May of 1992. Two of them were given to him by his brother. One was given to him by a correctional officer during a hunting trip. He kept that rifle for five months, then gave it to a felon who had been convicted in Vermont of armed robbery and unlawful possession of a firearm. The fourth gun was a rifle he had borrowed from a friend. It was discovered in May of 1991 when Cahill placed a recorded call to another friend asking him to remove that gun from the location where Cahill had hidden it.[2]

_____

wife told the police at the time: namely, that Cahill, after shooting her husband, had held her and her daughter at gunpoint for approximately thirty minutes to prevent them from providing assistance.

[2] At the time, Cahill was detained at the Correctional Center in Vermont after being arrested and later charged with one count of burglary and two counts of assault. He had allegedly punched his ex-girlfriend in the head multiple times, stopping only when she promised not to leave him. She then reportedly went to the hospital but could not receive treatment because the defendant removed her from the premises. The same woman reported

Cahill was sentenced to 262 months of imprisonment and five years of supervised release. He finished the custodial portion of his sentence in late 2010, at which point he was transferred to the custody of the Texas Department of Corrections to address a parole violation in connection with the 1978 murder conviction. In March of 2018, he was paroled to a halfway house in Texas, but absconded less than five months later. He then returned to his native Vermont before settling in Corinth, Maine.

In 2020, Cahill was once again accused of a serious criminal offense. As the presentence report notes, a Maine resident went to the police on May 15, 2020, with his ear bleeding and both forearms "bruised and bloody," claiming that Cahill had gone onto his property and hit him in the head with a crowbar. Contacted by the police, Cahill admitted that he had done so, but alleged that they had argued and that the victim had tried, unsuccessfully, to hit him first. Cahill was arrested based on the other party's account and his admission, but no charges were issued.

---

an earlier incident in which the defendant had allegedly pushed her to the ground and dragged her. The burglary charge, also supported by the ex-girlfriend's statements to the police, involved the defendant's alleged breaking into a camp and stealing items.

The charges went forward but the court declared a mistrial after it discovered that jury members had improperly discussed the case among themselves. The State Attorney's Office then dismissed the case, noting that the defendant was already being prosecuted by the federal government under 18 U.S.C. § 922(g).

In 2021, with assistance from the FBI, the Denton, Texas Police Department discovered that Cahill might be in Maine. The Texas authorities then requested help from the Maine State Police, which determined Cahill's location through his driver's license and the registration of the car he was known to drive. The defendant was arrested on August 17, 2021. After being advised of his rights under Miranda, he confessed to having two firearms by the dresser in his bedroom.

The police obtained a warrant to search for those firearms but were unable to find them in Cahill's bedroom. The owner of the house, a friend of Cahill's, then admitted that he had moved the guns from his tenant's bedroom to his own closet. Afterwards, he gave the weapons, both loaded, to the officers. The police also found several boxes of ammunition and a firearm cleaning kit in Cahill's bedroom.

A federal grand jury in Maine indicted Cahill in January 2022 on one count of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1), listing the 1978 murder conviction as the predicate felony. On March 31, 2022, he appeared at the United States District Court for the District of Maine and entered a guilty plea. The court sentenced him on October 3, 2022, to seventy-two months of imprisonment and three years of supervised release.

Cahill timely filed a notice of appeal. He raises two

grounds of appeal to us: first, that the district court erred in accepting his guilty plea, and second, that its sentence was substantively unreasonable. We review each challenge in turn.

## II. Discussion

### A.        Review of the defendant's guilty plea.

A guilty plea is constitutionally valid only if it is entered "voluntarily, knowingly, and intelligently." Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005). "[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" Bousley v. United States, 523 U.S. 614, 618 (1998) (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)). Accordingly, before it may accept a guilty plea, the court is required to "inform the defendant of, and determine that the defendant understands, . . . the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). The record must show that the defendant "correctly understood the essential elements of the crime with which he was charged." See Bousley, 523 U.S. at 618.

The district court must also determine that there is a factual basis for the defendant's guilty plea. See Fed. R. Crim. P. 11(b)(3). "The purpose of this requirement is to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing

- 6 -

that his conduct does not actually fall within the charge.'" United States v. Ventura-Cruel, 356 F.3d 55, 59-60 (1st Cir. 2003) (quoting Advisory Committee Notes to the 1966 Amendment, Fed. R. Crim. P. 11).

Cahill argues that the district court failed to assure itself, and to create a sufficient record demonstrating, that his guilty plea was constitutionally valid and in accordance with Rule 11. Because he did not make this objection at the district court, plain error review applies. United States v. Guzmán-Merced, 984 F.3d 18, 20 (1st Cir. 2020).

"The defendant's burden under the plain error standard is a heavy one." United States v. Ramirez-Benitez, 292 F.3d 22, 27 (1st Cir. 2002). The defendant must prove "(1) an error, (2) that is clear or obvious, (3) which affects his substantial rights . . . and which (4) seriously impugns the fairness, integrity, or public reputation of the proceeding." United States v. Correa-Osorio, 784 F.3d 11, 17-18 (1st Cir. 2015).

To assess whether the court's acceptance of Cahill's guilty plea was valid under the principles set forth above, we review the record and, in particular, the transcript of the change of plea hearing. We hold that the plea colloquy sufficiently demonstrates that Cahill understood the nature of the charge against him.

- 7 -

At the change of plea hearing, the district court, before accepting Cahill's guilty plea, asked him and his counsel "a few questions" to ensure that Cahill was pleading knowingly and voluntarily. The court first asked Cahill whether he was pleading guilty because he was actually guilty. It then asked Cahill's counsel whether he was "satisfied" of the defendant's actual guilt. Counsel responded that he was and that he "should indicate to the Court that [his] assessment of the prosecution's theory [was] based on . . . constructive possession." The court then asked whether Cahill had "receive[d] a copy of the indictment," had had "enough time to discuss the charge" with his counsel, and had had "the elements and the nature of the charge" explained to him by his counsel, obtaining affirmative answers to each question. The court then explained the rights that Cahill would waive by pleading guilty and the potential penalties that might be imposed.

The court proceeded to ascertain whether there was an adequate factual basis for Cahill's guilty plea. It asked the prosecutor "to summarize the evidence the Government would expect to offer should the matter proceed to trial." The government indicated that a document describing such evidence, referred to as the "prosecution version," had been filed on the docket. Cahill's counsel confirmed to the Court that he had "reviewed" the prosecution version with Cahill "several times," that he was satisfied that the government could "produce the evidence

- 8 -

described in that document," and that a jury could find Cahill guilty beyond a reasonable doubt based on the admissible portion of that evidence.

The court then asked Cahill whether he understood the evidence at issue in the case and had "read and discussed with [his] attorney" the "document . . . referred to as the prosecution version." Cahill confirmed that he had and that he did not "disagree with any of the information contained in that document."

Faced with this record, Cahill, on appeal, mounts two closely adjacent arguments. First, he argues that the record fails to show, to a sufficient degree, that he understood the charge and that his plea was knowing and voluntary. Second, he argues that "[t]he district court erred by not explaining all the elements of the crime" before accepting his guilty plea.

Cahill's arguments focus on his possible misunderstanding of the essential element of possession in the context of 18 U.S.C. § 922(g). Possession of a firearm may be actual or constructive. United States v. Gúzman-Montañez, 756 F.3d 1, 8 (1st Cir. 2014). "Constructive possession exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object either directly or through others." United States v. McLean, 409 F.3d 492, 501 (1st Cir. 2005) (quotation omitted). Cahill argues that his answers at sentencing show only that he knew the guns were in the room,

but not that he intended to exercise dominion or control over them. He argues that the court "did not explore and establish[] and [he] did not confirm" that he had the requisite intent, and so he may have pled guilty based on a mistaken understanding of the law and the government's burden.

We discern no such error. Cahill's counsel assured the court that he had discussed and reviewed the indictment and the prosecution's statement of facts with his client. Cahill confirmed that account and told the court that his counsel had explained to him the nature and elements of the charge. As a general rule, the court is entitled to rely upon those assurances, and, absent any indication in the record of coercion, confusion, or misrepresentation, we see no reason to depart from that rule. Contrary to Cahill's argument, the district court was not required here to "explain the elements of each charge to the defendant on the record." Bradshaw, 545 U.S. at 183; see also United States v. Cruz-Rivera, 357 F.3d 10, 13 (1st Cir. 2004) ("[Rule 11] does not require the court to explain the technical intricacies of the charges in the indictment."). "[T]he record accurately reflects that the nature of the charge and the elements of the crime were explained to [Cahill] by his own, competent counsel." Bradshaw, 545 U.S. at 183. Cahill's plea is constitutionally valid.

Indeed, Cahill and his counsel provided not only general assurances that they understood the government's case, but, when

asked by the court whether he was satisfied that the defendant had pleaded guilty because he was actually guilty, his counsel stated that he was and indicated that he "assess[ed]" the "prosecution's theory" as "based on . . . constructive possession." The court permissibly relied upon defense counsel's assurances that he had discussed the case with his client and, presumably, adequately counseled him as to his potential criminal liability. As the Supreme Court has noted, "[w]here a defendant is represented by competent counsel, the court usually may rely on counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." Bradshaw, 545 U.S. at 183.

Having probed the foundation for the counseled defendant's guilty plea and found it to be solid, the court did not have to then explain to him the "intricacies" of constructive possession or the other legal doctrines that might be at issue in his case.[3] See Cruz-Rivera, 357 F.3d at 13. Such is the rule;

---

[3] Cahill also suggests that there was an inadequate factual basis for the plea because the element of possession was not sufficiently supported. We disagree. "To establish a sufficient factual foundation for a plea, 'the government need only show a rational basis in fact for the defendant's guilt.'" United States v. Torres-Vázquez, 731 F.3d 41, 44 (1st Cir. 2013) (quoting United States v. Ramos-Mejía, 721 F.3d 12, 16 (1st Cir. 2013)). The government has shown in its statement of facts, which was accepted by the defense, that Cahill admitted to having two firearms in his bedroom and that the police were subsequently able to locate those guns along with ammunition and a weapons cleaning kit. The record plainly supports the existence of constructive

and it is sound, as it affords proper deference to the role of defense counsel in our adversarial system.

**B.        Review of the sentence for substantive reasonableness.**

The government recommended a sentence of sixty months of imprisonment, which exceeded the range of thirty to thirty-seven months calculated in the PSR.  The report had noted, as potential grounds for a departure, that Cahill's criminal history category "substantially underrepresent[ed]" his criminal history and risk of recidivism, "as evidenced by [his] absconding from parole in the State of Texas and from supervised release from the District of Vermont in 2018."  The report referenced, further, the fact that Cahill had confessed to hitting someone in the head with a crowbar in 2020.

The government argued in favor of an upward variance or departure because of the defendant's history of violent crime and the fact that he had already been convicted in the past of unlawful possession of firearms.  A longer sentence would be necessary, then, "to specifically deter the defendant from committing more crimes and to protect the public."

The defense argued that a sentence above the guidelines range was not warranted.  For one, Cahill had not used the guns at issue and he had kept them for an innocent purpose: so that

---

possession for the purposes of the plea.

family members could go hunting when they came to visit. Cahill's advanced age and health issues also meant that he did not "pose an ongoing threat to the community." Finally, his convictions were stale and not representative of his current self.

After hearing character testimony from Cahill's witnesses and considering the parties' arguments, the court imposed its sentence. It began by adopting the PSR, as revised and accepted by the parties, as part of its findings. Noting that it had considered the Sentencing Guidelines and the factors listed in 18 U.S.C. § 3553(a), the court then found that, due to Cahill's "unrelenting" criminal history and manifest "tendency toward violence," he "pose[d] a particular danger to the community," which was aggravated by his possession of firearms. The court expressly took into account Cahill's age and "physical condition," but found that an upward variance would be necessary to protect the public and to provide a "deterrent effect[] which perhaps m[ight] seize upon [Cahill] in this late season." Having explained its findings, the court imposed a sentence of seventy-two months of imprisonment and three years of supervised release.

On appeal, Cahill argues that his seventy-two-month sentence is substantively unreasonable because it is excessive. "We review challenges to the substantive reasonableness of a sentence for abuse of discretion." United States v. Bruno-Campos, 978 F.3d 801, 808 (1st Cir. 2020).

"In the sentencing context, 'reasonableness is a protean concept.'" United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) (quoting United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)). "Even so, the inquiry is not standardless: the hallmarks of a substantively reasonable sentence are a 'plausible sentencing rationale' and a 'defensible result.'" United States v. Miranda-Díaz, 942 F.3d 33, 42 (2019) (quoting Martin, 520 F.3d at 96). A "plausible sentencing rationale" is one that is "tailored to the facts and circumstances of the case at hand." Id. at 43. We undertake the reasonableness inquiry mindful that "it is not our task simply to second-guess a sentencing court's considered decisions about matters squarely within its discretion." Id. at 42.

An "adequate explanation" is required when the district court imposes a variant sentence, as it did here. Bruno-Campos, 978 F.3d at 809. But the court need not "be precise to the point of pedantry" when articulating its rationale. United States v. Del Valle-Rodríguez, 761 F.3d 171, 177 (1st Cir. 2014).

Here, the court did articulate a plausible rationale for its upwardly variant sentence: namely, that Cahill's criminal history, marked by violent crimes and a proclivity for reoffending, meant that a longer sentence was necessary to protect the community and to specifically deter him.

- 14 -

Cahill argues that the district court's reference to his "unrelenting" and "violen[t]" criminal history was supported solely by the 1978 murder conviction, which "was already accounted for in the PSR guidelines calculation." And so, the argument goes, there was no "factual basis" for that characterization and it could not support a variance. We disagree. The district court expressly adopted the entirety of the revised presentence investigation report, to which neither party objected, as part of its findings. That report amply supports the court's conclusion, which is, then, adequately explained. Given the report's sheer length, the court's choice to incorporate it by reference, rather than recite all of the defendant's past criminal conduct, was understandable. And, in any case, the court need only offer a "plausible sentencing rationale" that achieves a "defensible result," Miranda-Díaz, 942 F.3d at 42 (quotation omitted); it need not explicitly articulate all of the facts that it has considered in arriving at a conclusion, particularly when, as here, those facts are clear from the record.

Thus, the court did not abuse its discretion in finding, based on the PSR, that Cahill was particularly inveterate in his recidivism and particularly resistant to the "normative expectations of civil society which are embodied in the criminal code." That he has collected more than a dozen convictions in his lifetime, much of which has been spent incarcerated, is proof

enough of that. But the timing of those convictions is also suggestive, in that they recur with almost clockwork regularity. In the past, after being convicted of serious crimes, the defendant has quickly reoffended. This happened, for example, in his twenties, when, after pleading guilty to misdemeanor assault for raping a woman at knifepoint and being given a non-custodial sentence, he continued to rack up multiple burglary convictions and parole violations. The pattern continued into his middle age, when Cahill violated his conditions of parole and earned his first felon-in-possession conviction shortly after serving the custodial portion of his murder sentence. In 2018, history repeated itself as Cahill once again absconded from parole soon after his release from prison and proceeded to squirrel away more guns in full defiance of the law. The same conduct, repeated over time, becomes even more concerning, as it shows undiminished disregard for the law and an inability to absorb the lessons that criminal punishment is meant to inculcate. See Miranda-Díaz, 942 F.3d at 43 ("[T]he appellant's repeated return to criminal behavior despite earlier encounters with the criminal justice system reflected an abject failure to renounce criminality and amply justified an upwardly variant sentence.").

The court's finding that Cahill's criminal history was marked by a tendency towards violence is also adequately explained and supported by the record. The murder conviction suffices to

establish that conclusion, not least because of the considerable deference we pay to the sentencing court's judgment. The court was certainly not required to credit Cahill's bare assertion that the homicide was accidental when there was a valid conviction to the contrary.

Finally, Cahill argues that the district court's "dismiss[al]" of the mitigating factors he had presented -- namely, his age, physical condition, and the alleged fact that the guns were meant to be used for hunting by guests -- was erroneous. First, the court did expressly consider those factors, so Cahill's argument consists of nothing but an attempt "to substitute his judgment for that of the sentencing court." Clogston, 662 F.3d at 593 (noting that the "weighting" of the "relevant [sentencing] factors" is "largely within the court's informed discretion"). And the court's finding that Cahill was a "danger to the community," in spite of his age and orthopedic issues, was supported by a "plausible sentencing rationale," see Miranda-Díaz, 942 F.3d at 42 (quotation omitted). The very purpose of a weapon, and a firearm especially, is that it allows its bearer to inflict great harm regardless of his physical strength. Even the most enfeebled can pull a trigger.

Because the district court articulated a plausible sentencing rationale and achieved a defensible result, we hold that the sentence was substantively reasonable.

The appellant's conviction and sentence are **affirmed.**