# United States Court of Appeals
## For the First Circuit

Nos. 22-1543, 22-1552

UNITED STATES OF AMERICA,

Appellee,

v.

AUGUSTO VALDEZ,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Gelpí, Howard, and Rikelman,
Circuit Judges.

Marie Theriault, for appellant.
Karen L. Eisenstadt, Assistant United States Attorney, with
whom Joshua S. Levy, Acting United States Attorney, was on brief,
for appellee.

December 14, 2023

**GELPÍ, Circuit Judge.** Defendant-Appellant Augusto Valdez appeals from his guilty plea and conviction, for which he received 120 months' imprisonment, followed by a five-year term of supervised release. He raises two issues. First, he asserts that the district court should have granted his motion to withdraw his guilty plea because he conspired only with a confidential source ("CS") and the district court did not ensure that he knew that he could not conspire illegally with a government agent -- two legal errors that he alleges tainted the underlying conspiracy charge. Second, he seeks to vacate his sentence because the district court should have, sua sponte, verified his eligibility for the safety valve under U.S.S.G. § 5C1.2.

We affirm, addressing each issue seriatim.

## I. BACKGROUND

We recite only the facts necessary to resolve this appeal. Because Valdez challenges his guilty plea and an alleged sentencing error, we gather these "facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSR), and the record of the disposition hearing." United States v. Cahill, 85 F.4th 616, 619 (1st Cir. 2023) (quoting United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009)).

## A. Relevant Facts and Initial Legal Proceedings

In July 2019, law enforcement officers received a report from a confidential source ("CS") that Valdez "was attempting to purchase a large quantity of cocaine from a source of supply in Texas." According to CS, Valdez offered to pay CS if CS, using Valdez's money, bought several kilograms of cocaine from the Texas source.

On July 10, 2019, CS and Valdez discussed logistics while law enforcement officers monitored the conversation. Valdez told CS that he had "paid participants well for helping him with prior drug shipments." On July 11, 2019, Valdez delivered $450,000 to CS for the cocaine.

On July 15, 2019, at a meeting in Texas that Valdez arranged, CS delivered the money to the Texas source. Two days later, at Valdez's instruction, CS received eighteen kilograms of cocaine from the Texas source to transport to Valdez, who was in Boston. Anticipating the delivery, law enforcement agents gave CS "[seventeen] sham kilogram packages and [one] kilogram of actual cocaine for delivery to Valdez." CS then met Valdez and delivered these packages, but Valdez was stopped and arrested by law enforcement.

A grand jury in the United States District Court for the District of Massachusetts indicted Valdez in August 2019, charging him with (1) conspiracy to distribute and possess, with intent to

distribute, five or more kilograms of cocaine, 21 U.S.C. § 846 ("Count One"); and (2) possession with intent to distribute 500 grams or more of cocaine, 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii) ("Count Two").

Valdez and the government attended a discovery conference before the United States Magistrate Judge on December 23, 2019. At the conference, the government informed the Magistrate Judge that it had provided all required discovery under District of Massachusetts Local Rule 116.1. Local Rule 116.1(c)(1)(E) obligates the government to provide to the defendant "the name of any person asserted to be a known unindicted coconspirator." L.R., D. Mass. R. 116.1(c)(1)(E).

### B. Valdez's Guilty Plea

Valdez appeared before the district court to plead guilty without entering a plea agreement to both counts on September 21, 2020. The district court conducted a Federal Rule of Criminal Procedure 11 colloquy with Valdez.[1] First, the district court verified that Valdez was a high school graduate and asked if he was competent to plead guilty, ascertaining that he was not previously treated for mental illness and was not presently

---

[1] Although it is undisputed that Valdez can "understand some English," he primarily speaks Spanish. So the district court proceeded with the assistance of a certified court interpreter, having Valdez respond in Spanish and the interpreter translate his responses into English.

- 4 -

under the influence of alcohol, narcotics, or medication of any kind. Second, the district court asked Valdez if he had "received a copy of the indictment . . . and . . . discussed those charges and the case in general with" his attorneys, to which Valdez replied, "Yes." The district court followed up on this point in the following exchange:

> THE COURT: And in your own words, Mr. Valdez, what do you understand that you are being charged with here this afternoon?
>
> VALDEZ: Yes.
>
> THE COURT: What crime do you understand that you are being charged with here this afternoon?
>
> VALDEZ: I'm not sure. I'm not sure how to call them, how to call the charges.
>
> THE COURT: Well, I don't need a technical name. What do you understand you're here for?
>
> VALDEZ: Conspiracy for 5 kilos or more.
>
> THE COURT: 5 kilos of what?
>
> VALDEZ: Cocaine.

Third, the district court inquired into whether Valdez understood the consequences of his guilty plea. Beyond informing him that he would give up certain civil rights, the district court asked the government to read the charges and note "if there [were] any mandatory minimums." The government did so for both counts, noting that (1) Count One carried a ten-year mandatory minimum, and (2) Count Two carried a five-year mandatory minimum. The

district court then asked if Valdez understood these consequences, to which he replied that he did. Finally, the district court explained to Valdez the advisory nature of the Sentencing Guidelines, the district court's wide discretion in imposing a sentence, and the constitutional rights -- such as the right to a trial by jury and the right to counsel at trial -- that he would give up by pleading guilty, before asking Valdez once more if he understood the consequences of his guilty plea. Valdez said that he indeed understood.

The government then recited the facts, as stated above, underlying Valdez's plan to purchase cocaine from the Texas source. The district court asked Valdez if he disagreed with what the government claimed it could prove were the case to go to trial. Valdez said "[n]o" and pled guilty. The district court accepted his plea.

Five months later, on February 21, 2021, Valdez filed a pro se motion to withdraw his guilty plea to Count One. On April 2, 2021, Valdez received substitute counsel, who filed a supplemental memorandum supporting the motion. The motion (and memorandum) contended that the district court should vacate Valdez's plea because he conspired only with a government source, nullifying the underlying conspiracy.

The district court denied the motion. It conceded that "one cannot conspire solely with a government agent" but

recognized that this conspiracy featured three coconspirators: Valdez, CS, and the Texas source, who was not a government agent. The district court further remarked that Valdez did not argue "that his plea was made without his knowledge, intelligence and volition" beyond this point.

Valdez filed two additional pro se motions on April 15 and June 3, 2022. His first motion sought to dismiss Count One on the same basis as his motion to withdraw his guilty plea.[2] His second motion presented a new issue; in Valdez's view, the government improperly enhanced his mandatory-minimum sentence based on a prior conviction under 21 U.S.C. § 841(b)(1)(A) without providing notice to the court, as required by 21 U.S.C. § 851(a)(1). The district court denied Valdez's first motion for the reasons it explained in its earlier opinion. And it denied the second motion without prejudice, reasoning that it concerned an issue better suited for the sentencing hearing.

### C. Sentencing

The district court held Valdez's sentencing hearing on July 6, 2022. It began the hearing by noting that it considered both parties' memoranda, the letters supporting Valdez, and the PSR. Neither party objected to the PSR, which articulated the

---

[2] This motion included an affidavit, in which Valdez stated that his trial counsel did not explain the charges to him because his trial counsel did not inform him that he could not "conspire with a [g]overnment informant."

same facts that we have summarized. Both parties agreed with how the PSR calculated Valdez's advisory sentencing guideline range, which the district court adopted -- finding that Valdez had a total offense level of twenty-nine under U.S.S.G. §§ 2D1.1(a)(5) and 3E1.1(a)-(b) and a criminal history category of I, resulting in a recommendation of 87 to 108 months imprisonment. Nevertheless, the PSR noted, and both Valdez and the government agreed, that Valdez was subject to a mandatory minimum sentence of 120 months' imprisonment.

The PSR acknowledged that Valdez met the first four criteria to qualify for the safety valve under 18 U.S.C. § 3553(f)(1)-(4) and U.S.S.G. § 5C1.2, which permits a federal district court to sentence an offender below a statutory mandatory minimum. According to the PSR, if the district court found that Valdez met the fifth criterion by proving that he "truthfully provided to the Government all information and evidence [he] has concerning the . . . offenses[,]" U.S.S.G. § 5C1.2(a)(5), then the district court could reduce Valdez's offense level by two points to twenty-seven. This would place his advisory sentencing range between seventy and eighty-seven months.

No one brought compliance with the fifth safety-valve factor to the district court's attention at the sentencing hearing. Instead, Valdez's counsel acknowledged that "[t]his [was] one of those . . . occasions where the guidelines are lower than the

mandatory minimum" but requested a 120-month mandatory-minimum sentence anyway. The district court afforded Valdez and his counsel a chance to raise any other issue before pronouncing a sentence, but neither chose to do so. The district court, therefore, sentenced him to 120 months' imprisonment on Count One and sixty months' imprisonment on Count Two, to be served concurrently, followed by five years of supervised release (a sentence which is not at issue here). This timely appeal followed.

## II. DISCUSSION

### A. Motion to Withdraw Guilty Plea

Valdez's argument -- that the district court should have granted his motion to withdraw his guilty plea "because it is a legal impossibility to conspire with a governmental agent to commit a crime" -- is a moving target. At times, he contends that this principle invalidates his plea and Count One altogether, and thus the district court should have granted his motion to withdraw his plea. At other points, Valdez posits that the district court should have granted his motion to withdraw because his plea was not knowing, voluntary, and intelligent. In doing so, he contends that the district court should have clarified whether he understood that he could not illegally conspire with a government agent.[3]

---

[3] Valdez believes that his counsel was constitutionally ineffective for "pressuring him to plead guilty" to Count One, and he asks us to consider this in determining whether his plea was knowing, intelligent, and voluntary. Where an

We begin our analysis with the Rule 11 standard. "A defendant may withdraw a guilty plea before sentence is imposed if he shows 'a fair and just reason for requesting the withdrawal.'" United States v. Isom, 580 F.3d 43, 52 (1st Cir. 2009) (quoting United States v. Sousa, 468 F.3d 42, 46 (1st Cir. 2006); Fed. R. Crim. P. 11(d)(2)(B)). Generally, we weigh "the totality of the circumstances"[4] in determining whether a defendant has met that burden. United States v. Fonseca, 49 F.4th 1, 7 (1st Cir. 2022)

---

ineffective-assistance of counsel claim was not raised below, "[w]e typically require that [the] claim be presented first to the district court in a collateral proceeding" under 28 U.S.C. § 2255 so that the district court may create a factual record. United States v. Ramirez-Benitez, 292 F.3d 22, 31 (1st Cir. 2002) (citing United States v. Campbell, 268 F.3d 1, 7 (1st Cir. 2001)); see United States v. García-Núñez, 71 F.4th 1, 11–12 (1st Cir. 2023). Indeed, to litigate the effectiveness of counsel as grounds to withdraw a guilty plea in an ongoing criminal proceeding, the defendant must both raise the issue below and develop a record that "would allow us to fairly consider his claim." United States v. Fernández-Santos, 856 F.3d 10, 17 & n.3 (1st Cir. 2017). Upon review, the record appears to be too sparse to rule on this claim right now, so we decline to address the issue here. See id.; García-Núñez, 71 F.4th at 11. We note that, in so declining, our decision is "without prejudice to [Valdez's] right to pursue [the claim] later" in a collateral proceeding. Fernández-Santos, 856 F.3d at 18 (citing United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993)).

[4] We have expressed alternative formulations of this test regarding when we must consider prejudice to the government. Compare United States v. Dunfee, 821 F.3d 120, 127 (1st Cir. 2016) (per curiam), and Isom, 580 F.3d at 52, with United States v. Adams, 971 F.3d 22, 38 (1st Cir. 2020), and United States v. Gardner, 5 F.4th 110, 123 (1st Cir. 2021) (Lynch, J., dissenting). The circumstances here, however, weigh against Valdez so much that we need not consider prejudice at all. See Fonseca, 49 F.4th at 7 n.1.

(citing United States v. Gardner, 5 F.4th 110, 118 (1st Cir. 2021)).   Such circumstances include "whether the plea was voluntary, intelligent, knowing and in compliance with Rule 11; the strength of the reasons offered in support of the motion; whether there is a serious claim of actual innocence; [and] the timing of the motion."  United States v. García-Núñez, 71 F.4th 1, 9 (1st Cir. 2023) (alterations in original) (quoting Isom, 580 F.3d at 52).   "[T]he 'core concerns of Rule 11,' whether the plea was knowing, intelligent, and voluntary, are the most important when reviewing a district court's denial of a motion to withdraw a guilty plea."  Id. (citation omitted) (quoting Isom, 580 F.3d at 52).

Under Rule 11, the district court must inform a defendant of "the elements of the charges that the prosecution would have to prove at trial."  United States v. Fernández-Santos, 856 F.3d 10, 16 (1st Cir. 2017) (quoting United States v. Gandia-Maysonet, 227 F.3d 1, 3 (1st Cir. 2000)).   "The manner in which the charge is explained and the method for determining the defendant's understanding of the charge will vary from case to case depending upon the complexity of the charges, the capacity of the defendant, and the attendant circumstances."  United States v. Ketchen, 877 F.3d 429, 432-33 (1st Cir. 2017) (quoting United States v. Cotal-Crespo, 47 F.3d 1, 6 (1st Cir. 1995)).   "Ordinarily, 'it is sufficient in a plea colloquy for a district court to ascertain

- 11 -

that a defendant is aware of the nature of the charge[s] against him by reading the charge[s] in the indictment to the defendant and obtaining his competent acknowledgment that he understands the charge[s].'" Fernández-Santos, 856 F.3d at 16 (alterations in original) (quoting United States v. Ramos-Mejía, 721 F.3d 12, 15 (1st Cir. 2013)).

## 1. Standard of Review

"We review an unpreserved Rule 11 claim for plain error." United States v. Williams, 48 F.4th 1, 5 (1st Cir. 2022) (citing United States v. Vonn, 535 U.S. 55, 58-59 (2002)). Preserved claims, however, are reviewed for an abuse of discretion. See García-Núñez, 71 F.4th at 9. Valdez raised his primary argument -- that he pled guilty to conspiring with a government agent, which is not a crime, so his motions should have been granted -- below. For that issue, we use the abuse-of-discretion standard. See id.

But the same cannot be said for his claim that his plea was not knowing, intelligent, and voluntary. Nothing in the record[5] reveals that this claim was raised squarely to the district

---

[5] To be clear, tucked away in an attachment to his pro se motion, Valdez claimed that his guilty plea was "not knowingly nor was it intelligently made because . . . I was never told that I cannot be held responsible for me conspiring with a government's informant." Reading this in context, however, reveals that Valdez was reiterating his contention that he could not be convicted of conspiracy. And, in any event, this "perfunctory" reference did not preserve the issue for appeal. United States v. Zannino, 895

- 12 -

court, and that is a necessary predicate to evade plain error review. See id. at 9-10. Therefore, we take a bifurcated approach, asking whether the district court: (1) abused its discretion when it denied Valdez's motion to withdraw because he could not be convicted for conspiring with a government agent; or (2) plainly erred when it denied his motion because Valdez did not know, and was not informed, of this requirement.

## 2. Conspiring with a Government Agent

Although a person may not be convicted for conspiring only with a government agent, "the plurality requirement is satisfied by the participation of 'two' true conspirators . . . ." United States v. Giry, 818 F.2d 120, 126 (1st Cir. 1987); see also United States v. Cordero, 668 F.2d 32, 43 (1st Cir. 1981) (rejecting legal-innocence argument where government agent was interlocutor between two non-governmental co-conspirators); United States v. Cordero, 973 F.3d 603, 617 (6th Cir. 2020) ("[I]t is well-settled law that a defendant's conversations with a government agent may be used to establish the existence of a conspiracy between the defendant and other, non-government co-conspirators." (citations omitted)); United States v. Wenxia Man, 891 F.3d 1253, 1265 (11th Cir. 2018) ("[A] government informer may serve as the connecting link between conspirators." (internal

_____

F.2d 1, 17 (1st Cir. 1990); see also United States v. Zenon-Rodriguez, 289 F.3d 28, 35 (1st Cir. 2002).

- 13 -

quotation marks and original alterations omitted) (quoting Sears v. United States, 343 F.2d 139, 142 (5th Cir. 1965))).  The facts that Valdez agreed to at the change-of-plea hearing revealed two true conspirators: Valdez and the Texas source.

Valdez approached CS only to secure the shipment of cocaine from the Texas source.  He also arranged the meeting in Texas between CS and the Texas source, gave $450,000 to CS to deliver to the Texas source, and directed CS to bring the drugs back to Boston from the Texas source.  Thus, Valdez admitted to arranging a three-way drug deal, in which one of the coconspirators was not a government agent.

Considering these facts, Valdez's motion to withdraw his guilty plea rested on faulty grounds.  Cf. United States v. Ramos, 810 F.2d 308, 312 (1st Cir. 1987) ("[I]f [a] defendant's factual contentions create no 'legally cognizable defense' to the charges, 'he has not effectively denied his culpability,' and the motion can be denied." (quoting United States v. Barker, 514 F.2d 208, 220 (D.C. Cir. 1975) (en banc))).  It was enough that Valdez pled guilty "to participating in a conspiracy that involved at least one other person" who was not a government agent to be "guilty of conspiracy."  United States v. Delarosa Arias, 979 F.3d 80, 82 (1st Cir. 2020) (quoting United States v. Matos-Quiñones, 456 F.3d 14, 21 (1st Cir. 2006)) (citing United States v. Penagaricano-Soler, 911 F.2d 833, 840 n.5 (1st Cir. 1990)).  The district court

correctly recognized this, so it acted within its discretion when it denied Valdez's motion.

### 3. Understanding of the Conspiracy Charge

"The defendant's burden under the plain error standard is a heavy one." United States v. Ramirez-Benitez, 292 F.3d 22, 27 (1st Cir. 2002). This requires Valdez to show "(1) 'an error . . . (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" United States v. Abraham, 63 F.4th 102, 110 (1st Cir. 2023) (alterations in original) (quoting United States v. Pennue, 770 F.3d 985, 989 (1st Cir. 2014)). With this in mind, we find no error here for a few reasons.

First, the record belies his claim that he was unaware of the identity of his coconspirator in Texas. The government provided Valdez with all required discovery at the discovery conference, including "the name of any . . . known unindicted coconspirator." L.R., D. Mass. 116.1(c)(1)(E). Valdez does not dispute this, so he cannot fault the district court for not informing him of information that he possessed.

Second, the colloquy at Valdez's Rule 11 hearing shows that he understood enough about the charges to satisfy the Rule's requirements. Valdez, who was a high school graduate, acknowledged that he understood the charges and the mandatory minimum sentence

that he faced at the change-of-plea hearing. He explained that he was pleading guilty to conspiracy to distribute five or more kilograms of cocaine. He told the district court that he discussed the charges, and the case in general, with his counsel. And he reassured the district court that he understood the consequences of his guilty plea. See, e.g., Ramos-Mejía, 721 F.3d at 15-16 (affirming the acceptance of a guilty plea where the defendant acknowledged that he understood the charges, reviewed them with his counsel, and comprehended the consequences of pleading guilty).

The nature of the conspiracy charge did not require more in-depth discussion. "[W]hile the subtleties of conspiracy law may be the bane of criminal law students, the basic principle is easily understood: a group of people agreeing to do something illegal." United States v. Carter, 815 F.2d 827, 829 (1st Cir. 1987). Thus, the district court could recite the charges, the possible punishments, and the facts proving that Valdez committed this run-of-the-mill crime to satisfy Rule 11's explanation requirement. See id. (affirming where the judge read the charges to the defendant, a high school graduate, who replied that he understood them); United States v. Jones, 778 F.3d 375, 382-83 (1st Cir. 2015).

We have rejected calls to require district courts to explain the nuances of criminal law under similar circumstances.

- 16 -

See Jones, 778 F.3d at 382-83 (conspiracy to traffic cocaine); Fernández-Santos, 856 F.3d at 16 (possession with intent to distribute cocaine).  For example, in United States v. Cahill, we rejected a defendant's attempt to invalidate a guilty plea on the basis that the district court did not confirm that he understood the requisite intent for constructive possession of a firearm as a convicted felon.  85 F.4th at 621-23 (reviewing for plain error).  We focused first on the defendant's assurances to the district court that he understood the charges and reviewed them with counsel, who explained them to him.  Id. at 622.  Because "the district court was not required . . . 'to explain the elements of each charge to the defendant on the record[,]'" it was not required to go over, in detail, the legal rationale for the defendant's culpability where the record showed that he reviewed his charges with counsel and had them explained to him.  Id. (quoting Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005)) (citing United States v. Cruz-Rivera, 357 F.3d 10, 13 (1st Cir. 2004)).

So too here.  Valdez explained to the district court that he understood the charges, that he reviewed the charges with his counsel, and that he understood the consequences of pleading guilty.  The district court "did not have to then explain" to Valdez "the 'intricacies' of" the plurality requirement "or the other legal doctrines that might be at issue in his case."  Id. (citing Cruz-Rivera, 357 F.3d at 13).  Accordingly, we affirm the

- 17 -

district court's denial of Valdez's motion to withdraw his guilty plea.

## B. Application of the Safety Valve

Valdez next submits that his sentence was "procedurally and substanti[vely] unreasonable" because the district court did not explain why it did not find Valdez eligible for the safety valve. Valdez, however, waived this argument.

"Waiver is the intentional relinquishment or abandonment of a known right." United States v. Carter, 19 F.4th 520, 524 (1st Cir. 2021) (citing United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002)). "[A] party waives an issue by 'purposefully abandon[ing] it, either expressly or by taking a contrary position' in the district court[.]" United States v. Ruiz-Valle, 68 F.4th 741, 746 (1st Cir. 2023) (quoting United States v. Chen, 998 F.3d 1, 6 (1st Cir. 2021)). "Waivers allow trial courts to narrow the issues and concentrate scarce judicial resources on genuinely contested matters -- and when a trial court makes a reasoned decision, it is unfair to allow a party to subvert that decision by resurrecting a waived claim." United States v. Orsini, 907 F.3d 115, 119 (1st Cir. 2018) (citing United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011)).

Valdez was aware of the statement in the PSR yet took a contrary position by asking for the mandatory-minimum sentence. The PSR informed Valdez and his counsel that he qualified for the

safety valve if he met the fifth criterion. At the sentencing hearing, the district court asked Valdez and his counsel repeatedly if they agreed with the advisory sentencing range in the PSR, if they had any objections to the PSR, and if they had anything else to bring to the district court's attention. Neither did so. Instead, they sought the mandatory-minimum sentence. "And by telling the district court that it could sentence him" to 120 months in prison, Valdez "waived any claim that the court could not do so" without considering the safety valve.[6] Ruiz-Valle, 68 F.4th at 745-46; see also, e.g., United States v. Escobar-Figueroa, 454 F.3d 40, 49 (1st Cir. 2006) (finding that the defendant waived

---

[6] In limited instances we have excepted "purely legal questions" from waiver. Orsini, 907 F.3d at 120; see United States v. Mulkern, 49 F.4th 623, 641 (1st Cir. 2022) (Barron, C.J., concurring in part and dissenting in part). We apply this exception "only sparingly," Orsini, 907 F.3d at 120, where "the equities heavily preponderate in favor of such a step." Mulkern, 49 F.4th at 635 (quoting Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 627 (1st Cir. 1995)). And we, in part, "consider factors 'such as whether the inadequately preserved arguments are purely legal, are amenable to resolution without additional factfinding, are susceptible to resolution without causing undue prejudice, are highly convincing, are capable of repetition, and implicate matters of significant public concern.'" Orsini, 907 F.3d at 120-21 (quoting Sindi v. El-Moslimany, 896 F.3d 1, 28 (1st Cir. 2018)). This "hen's teeth rare" exception does not apply here. Id. at 120. Valdez's challenge revolves around whether he "truthfully provided" information to the government to qualify for the safety valve, which requires factfinding. United States v. Harakaly, 734 F.3d 88, 98 (1st Cir. 2013) (noting that a defendant must prove entitlement to the safety valve by a preponderance of the evidence). This alone counsels strongly against exempting Valdez from the consequences of his waiver, so we shall not do so here.

an argument that § 3B1.2(b) applied where he did not raise the issue and his counsel expressed satisfaction with the sentence absent that provision).

Valdez's pro se[7] motion concerning § 851 does not alter this conclusion. He argued only that the government did not file a § 851 notice, as it must do when it seeks to enhance the statutory minimum or maximum penalties that apply to a given defendant based on a prior conviction for a relevant drug offense. 21 U.S.C. § 851(a)(1). However, the government did not seek to increase the applicable mandatory-minimum sentence based on Valdez's prior convictions. Cf. Suveges v. United States, 7 F.3d 6, 9 (1st Cir. 1993) ("[S]ection 851 is not in play . . . where, as here, the defendant is sentenced . . . to a prison term that falls within a non-enhanced statutory minimum-maximum range.") Valdez's pro se motion -- making an irrelevant argument under § 851, which would not affect the baseline, mandatory-minimum sentence that he requested -- thus did not

_____

[7] Valdez's pro se status would not permit us to treat his motion as one made under § 5C1.2 and preserved or raised below to the district court. We hold pro se filings "to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008) (citing Bolvin v. Black, 225 F.3d 36, 43 (1st Cir. 2000)). Holding him to those "reasonable limits," we cannot discern any basis upon which the district court would glean that Valdez's motion really took aim at the baseline, mandatory-minimum sentence of ten years. Id.

prevent his waiver here.  <u>Cf.</u> <u>United States</u> v. <u>Colón-De Jesús</u>, 85
F.4th 15, 25 (1st Cir. 2023) (recognizing that general objections
to a sentence do not preserve unsaid issues); <u>United States</u> v.
<u>Soto-Soto</u>, 855 F.3d 445, 448 n.1 (1st Cir. 2017).

## III. CONCLUSION

For the foregoing reasons, the denial of Valdez's motion
and the judgment below are **<u>affirmed.</u>**